1 | Patrik Nylund
2 | 2250 14th Avenue
  | San Francisco, CA 94116
3 | (415) 908-7068 (MOBILE)
4 | (360) 242-1413 (FAX, incoming only
  | patrik@pnylund.com
5 |
6 | Appearing Pro Se
7 | Plaintiff
8 |
9 | **UNITED STATES DISTRICT COURT**
10 | **NORTHERN DISTRICT OF CALIFORNIA**
  | **SAN FRANCISCO DIVISION**
11 |

E-filing



CV 08 3461

SI

12 | PATRIK NYLUND, Plaintiff,

Civil Action No._____

13 | vs.

14 | JUSTINA ABUEG, INDIVIDUAL CAPACITY;
15 | PETER ALLEN, INDIVIDUAL CAPACITY;
16 | ANGEL BAYANGOS, INDIVIDUAL CAPACITY;
   | DIANNE BOLOTTE, INDIVIDUAL CAPACITY;
17 | MARK GELADE, INDIVIDUAL CAPACITY;
18 | KENNETH KANN, INDIVIDUAL CAPACITY;
   | JOHN PALMER, INDIVIDUAL CAPACITY;
19 | CYNTHIA PASSON, INDIVIDUAL CAPACITY;
20 | DAVID POWER, INDIVIDUAL CAPACITY;
   | ANDREW SOMMER, INDIVIDUAL CAPACITY;
21 | NANCY SPERO, INDIVIDUAL CAPACITY;
22 | BRIAN TAYLOR, INDIVIDUAL CAPACITY;
   | PHYLLIS TREIGE, INDIVIDUAL CAPACITY;
23 | FREDRIC TRESTER, INDIVIDUAL CAPACITY;
34 | DOES 1-20, Defendants
25 |
26 |
27 |
28 |

COMPLAINT FOR
COMPENSATORY
DAMAGES, PUNITIVE
DAMAGES, AND
EQUITABLE RELIEF (COURT
ORDER)

Constitutional torts (42 U.S.C.
Sec. 1983, 1985, and 1986);
Coercive interference with
exercise of right secured by CA
constitution (California Civil
Code, Sec. 52.1 et seq);
Publication with reckless
disregard for truth or falsity and
with actual malice; Conspiracy
to commit fraud and deceit
(grand theft)

DEMAND FOR JURY TRIAL

1                                              **JURISDICTION**

2        1.      Jurisdiction is proper in this court because of constitutional torts (federal

3        question) pursuant to 42 U.S.C. Sec. 1983, 1985, and 1986.

4

5                                                 **VENUE**

6        2.      Venue is proper because a substantial portion of the events that gave rise to this

7        lawsuit occurred in this district.

8

9                                   **INTRADISTRICT ASSIGNMENT**

10       **3.**     Venue is proper because a substantial portion of the events that gave rise to this

11       lawsuit occurred at the CA Administrative Office of the Courts on 455 Golden Gate

12       Avenue, San Francisco, CA 94102. Plaintiff alleges on information and beliefs that

13       some defendants live in San Francisco, including Dianne Bolotte, Mark Gelade, and

14       Kenneth Kann.

15

16                                  **EXHAUSTION OF REMEDIES**

17       **4.**      Plaintiff has filed claims with the CA Judicial Branch pursuant to the CA Tort

18       Claims Act (California Government Code, Sec. 810 et seq); filed complaint with the CA

19       Department of Labor against former employer (California Labor Code, Sec. 96[k]);

29       initiated and participated in non-binding mediation (California Evidence Code, Sec.

21       1115 et seq); filed complaints with CA Judicial Branch Internal Audit Services; filed

22       complaints with the CA State Bar against Fredric Trester and Andrew Sommer; made a

23       request for information about how to file a civil rights complaint with the CA Attorney

34       General's Office; made a request with the CA Attorney General's Office for action and

25       relief pursuant to CA Civil Code, Sec. 52.1; made a request for information about how

26       to file a civil rights complaint with the US Department of Justice; and made a request

27       for a criminal investigation with the City of San Francisco District Attorney's Office as

28       well as a request for an action and relief pursuant to CA Civil Code, Sec. 52.1. A copy

1    of this complaint will be served on the California Attorney General (California Civil

2    Code, Sec. 52[d]).

3                                              **PLAINTIFF**

4    5.        Plaintiff Patrik Nylund resides in San Francisco, California. Plaintiff worked at

5    the CA Administrative Office of the Courts (AOC) as the employee of a third party,

6    AppleOne (dba), between October 2006 – September 2007. Plaintiff worked with the

7    CA Judicial Branch websites at the AOC as a Web Content Strategist. As such, he

8    helped internal content owners develop and manage content for public and internal

9    websites of the CA Judicial Branch, including but not limited to www.courtinfo.ca.gov.

10

11                                            **DEFENDANTS**

12                        **Superior Court of CA, County of Solano employees**

13   6.        Plaintiff alleges on information and beliefs that all the following defendants, all

14   sued in their individual capacity, were employees of the Superior Court of California,

15   County of Solano ("Superior Court") on July 19, 2007; have remained employees of the

16   Superior Court between then and the date of the filing of this complaint (with the

17   possible exception of an unknown number of DOES); and all worked at 530 Union

18   Avenue, Fairfield, CA 94533 (except for Justina Abueg and the possible exception of an

19   unknown number of DOES).

29   7.        David Power ("Power"), an individual, and Brian Taylor's superior during

21   Power's tenure as Presiding Judge (CA Rule of Court 10.603). Plaintiff alleges on

22   information and beliefs that Power has been a judge in Solano County since 1992-93;

23   that Power and Dennis Bunting (current Solano County Counsel) were judges in Solano

34   County at the same time and up until, at least, 1995; that Power and Bunting know each

25   other; that Power graduated from Santa Clara School of Law in 1975; that Power and

26   Trester are both members of the Santa Clara School of Law alumni network; and that

27   Power remained the Presiding Judge up until, or around, January 2008.

28   8.        Brian Taylor ("Taylor"), an individual, and Cynthia Passon's superior. Plaintiff

1    alleges on information and beliefs that Taylor on July 19 served as Acting Court

2    Executive Officer; that Taylor is a trained attorney that has been a member of the CA

3    State Bar since 1996; that Taylor was an employee in the AOC HR Division (Labor and

4    Employee Relations Unit) in San Francisco before becoming an employee in the

5    Superior Court Executive Office in, or around, 2005; that Taylor was promoted to Court

6    Executive Officer during tenure of Presiding Judge Power in, or around, December

7    2007; that some of those employed in the AOC HR Division in San Francisco at the

8    same time as Taylor were still employed by the AOC HR Division in July-September

9    2007; that Taylor's AOC employment overlapped with the AOC employment of

10   Kenneth Kann and Dianne Bolotte; that Taylor knows Kann, Bolotte, and Bayangos;

11   and that Taylor knows other AOC employees, including but not limited to Ernesto

12   Fuentes, the AOC HR Division Director.

13   9.      Cynthia Passon ("Passon"), an individual, who serves as a Senior Management

14   Analyst for the Court Executive Office. Plaintiff alleges on information and beliefs that

15   Passon was an HR Analyst in the AOC HR Division in San Francisco for many years

16   before becoming an employee of the Superior Court in, or around, 2006; that Passon

17   knew Taylor when they both worked in the AOC HR Division in San Francisco; that

18   some of those employed in the AOC HR Division in San Francisco at the same time as

19   Passon were still employed by the AOC HR Division in July-September 2007; that

29   Passon was also an employee in the AOC EOP Division for years; that Passon's AOC

21   employment started in, or before, 1999; that Passon's AOC employment overlapped

22   with the AOC employment of Kenneth Kann and Dianne Bolotte; that Passon knows

23   Kann, Bolotte, and Bayangos; and that Passon knows other AOC employees, including

34   but not limited to Ernesto Fuentes, the AOC HR Division Director.

25   10.     Justina Abueg ("Abueg"), an individual, who works as a Process Clerk in the

26   Superior Court Civil/Small Claims Division at 321 Tuolumne Street, Vallejo, CA

27   94590.

28

Complaint for damages and equitable relief                                          - 4 -

**CA Administrative Office of the Courts employees**

11.    Plaintiff alleges on information and beliefs that all the following defendants, sued in their individual capacity, were employees of the CA Administrative Office of the Courts ("AOC") on July 19, 2007; have remained employees of the AOC between then and the date of the filing of this complaint (except for Andrew Sommer, and the possible exception of an unknown number of DOES); and all work or worked at 455 Golden Gate Avenue, San Francisco, CA 94102 (with the possible exception of an unknown number of DOES).

12.    Kenneth Kann ("Kann"), an individual, and Dianne Bolotte's and Nancy Spero's superior. Plaintiff alleges on information and beliefs that Kann is a trained attorney that has been a member of the CA State Bar since 1986; that Kann became Division Manager for the Executive Office Programs ("EOP") Division in or around 2005; that Kann prior to this served as supervising attorney in the AOC Office of General Counsel ("OGC") for many years; that the OGC has two major functions: (1) house counsel and (2) development of CA Rules of Court and statewide legal forms; and that Kann as OGC Project Manager was directly involved and responsible for the development of statewide legal forms.

13.    Dianne Bolotte ("Bolotte"), an individual, and Peter Allen's and Nancy Spero's superior. Plaintiff alleges on information and beliefs that Bolotte serves as Assistant Director in the EOP Division; and that Bolotte has been an AOC employee since at least 2003.

14.    Nancy Spero ("Spero"), an individual. Plaintiff alleges on information and beliefs that Spero is a trained attorney that has been a member with the CA State Bar since 1974; that Spero is a senior attorney that works in the AOC EOP Division; and that Spero has been an AOC employee since, or before, 2002.

15.    Peter Allen ("Allen"), an individual, and Mark Gelade's superior. Plaintiff alleges on information and beliefs that Allen's AOC employment began in February 2007; that Allen serves as the Office of Communications Manager; that the Office of

1  Communications is part of the EOP Division; and that Allen is a trained attorney
2  licensed to practice law in Arizona.

3  16.     Mark Gelade ("Gelade"), an individual, and Phyllis Treige's superior. Plaintiff
4  alleges on information and beliefs that Gelade is and was a Manager in the Office of
5  Communications; that the Office of Communications is part of the EOP Division; and
6  that Gelade worked in the Web Communications Group.

7  17.     Phyllis Treige ("Treige"), an individual. Plaintiff alleges on information and
8  beliefs that Treige is and was a member of the Web Communications Group; and that
9  the Web Communications Group is part of the Office of Communications.

10  18.     Angel Bayangos ("Bayangos"), an individual, and HR Analyst in the AOC
11  Human Resources (HR) Division.

12  19.     Andrew Sommer ("Sommer"), an individual, and attorney in the AOC Office of
13  General Counsel. Plaintiff alleges on information and beliefs that Sommer's legal
14  expertise is employment law; that Sommer joined the AOC OGC in, or around, the
15  spring of 2007; and that Sommer's AOC employment ended in, or around, May 2008.

16

17  **Montgomery Partners, Inc. employees acting under color of law**

18  20.     Plaintiff alleges on information and beliefs that the following defendants, all
19  sued in their individual capacity, were employees of Montgomery Partners, Inc.
29  ("Montgomery Partners"), a California corporation headquartered in Marin County.

21  21.     Fredric Trester, an individual, and John Palmer's superior. Plaintiff alleges on
22  information and beliefs that Trester has been a licensed California attorney since 1980
23  and a licensed California Real Estate Broker since 1984; that Trester is employed by
34  Montgomery Partners as its Vice-President; that Trester has been an employee of
25  Montgomery Partners since, or around, 1988; that Trester is the Montgomery Partners
26  designated corporate officer; that Trester graduated from Santa Clara School of Law in
27  1980; that Trester and Power are both members of the Santa Clara School of Law
28  alumni network; that Trester is, and has been for years, a volunteer temporary judge for

1   the Superior Court of CA; and that Trester resides at 828 South Tremaine Avenue, Los
2   Angeles, CA 90005.

3   22.     John Palmer ("Palmer"), an individual. Plaintiff alleges on information and
4   beliefs that Palmer has been a licensed California Real Estate Salesperson since 1978;
5   that Palmer is the President of Montgomery Partners; that Montgomery Partners was
6   incorporated by Palmer in 1984; that Montgomery Partners is, de facto, Palmer's alter
7   ego; and that Palmer resides at 5 Upper Hill Road, Mill Valley, CA 94941.

8
9                        **DOES 1-20 acting under color of law**

10  23.     Plaintiff alleges on information and beliefs that the wrongs and harms outlined in
11  this complaint involves wrongs by DOES 1-20, persons under the law, that have acted
12  under color of law, in willful violation of state and federal laws, and with malice.
13  Because employees of the Superior Court and the AOC have engaged in a conspiracy to
14  conceal the wrongs of those that defrauded plaintiff and violated plaintiff's
15  constitutional and legal rights, plaintiff alleges on information and beliefs that the true
16  identities of involvement of DOES 1-20 may be ascertained through discovery and that
17  the true identify of each DOE may be the same as that of a defendant named elsewhere
18  in this complaint, or a defendant yet to be named. Thus, plaintiff reserves the right to
19  add the names of these defendants to this complaint when possible.

29
21                              **STATEMENTS OF FACT**

22  24.     Defendants conspired to deprive plaintiff of his rights under the Constitution and
23  laws of the United States and the Constitution and laws of the State of California.

34  25.     Defendants conspired to commit fraud and deceit.

25  26.     Defendants' criminal conduct was the proximate cause of plaintiff's injuries.

26  27.     Defendants conspired against plaintiff, a self-represented, non-attorney litigant.
27  A conspiracy may be inferred from the circumstances, including the nature of the acts
28  done, the relationships between the parties, and the interests of the co-conspirators.

1    28.    Defendants acted under color of law, outside the scope of their authority, with

2    malice, and in willful violation of law. David Power, Dianne Bolotte, and other

3    defendants engaged in activities that were inconsistent, incompatible and in conflict

4    with their duties as state employees. Power and Bolotte used the prestige of their

5    agencies for the personal gain of others.

6    29.    Plaintiff alleges on information and beliefs the existence of electronic records

7    (information) as evidence of conspiracy, collusion, and fraud. Such evidence may also

8    include, but may not be limited to, phone records.

9    30.    Defendants willfully denied plaintiff the Equal Protection of the 14th

10    Amendment to the U.S. Constitution. Defendants were motivated by a class-based

11    invidiously, discriminatory animus against plaintiff.

12    31.    Plaintiff was harmed by defendants' wrongs. Plaintiff has suffered damages,

13    including but not limited to monetary damages. Plaintiff has been devastated, both

14    emotionally and financially, as a result of defendants' wrongs. Defendants are

15    responsible for plaintiff's harm.

16

17    **July 19, 2007**

18    32.    On July 19, 2007, plaintiff went to the Superior Court of California, County of

19    Solano ("Superior Court") to file a small claims action outside of his assigned work

29    hours. Process Clerk Abueg refused to let plaintiff file the lawsuit because plaintiff's

21    Judicial Council form (SC-100) lacked material added by the local court. Plaintiff

22    informed defendant that under state law, no other form than the Judicial Council form

23    he had brought in with him was necessary to file the lawsuit. Yet, Abueg continued to

24    deny plaintiff his right to file the lawsuit. Plaintiff had reasons to believe that the local

25    material Abueg demanded plaintiff added to his filing could be misused by defendant

26    Trester to deprive plaintiff of rights spelled out in California Civil Code, Sec. 1953.

27    33.    California Civil Code, Sec. 1953, reads in part, "Any provision of a lease or

28    rental agreement of a dwelling by which the lessee agrees to modify or waive any of the

1    following rights shall be void as contrary to public policy...His procedural rights in
2    litigation in any action involving his rights and obligations as a tenant."

3    34.    Plaintiff refused to include material added by the local court because plaintiff
4    believed local material could be used by defendant, Trester, to force dispute out of the
5    court and into binding, private arbitration. Plaintiff believed that if the dispute ended up
6    in binding, private arbitration, the outcome of the dispute would not be determined by
7    state law, which was on plaintiff's side, but by language of the lease agreement, which
8    was contrary to public policy.

9    35.    Plaintiff had no choice other than to leave the courthouse without having had his
10   lawsuit filed. Plaintiff drove to a local store with Internet access and then returned to the
11   courthouse with copies of state law and CA Rules of Court that proved Abueg had no
12   legal authority upon which to deny plaintiff his legal right to file a lawsuit.

13   36.    Abueg refused to look at the printouts, yet kept denying plaintiff his legal right
14   to file the lawsuit. In an attempt to get Abueg to look at the printouts, including
15   California Rule of Court 1.42 available at www.courtinfo.ca.gov, plaintiff tried to
16   communicate that he was familiar with Judicial Branch websites as a result of working
17   with them every day at the AOC.

18   37.    California Rule of Court 1.42 states that "A court must not reject for filing a
19   Judicial Council form for any of the following reasons...The form lacks any other
29   material added by a court."

21   38.    Abueg immediately agreed to let plaintiff file the lawsuit, but without reviewing
22   the above CA Rule of Court and the other applicable state laws.

23   39.    Plaintiff alleges on information and beliefs that Superior Court policy is that
24   "Since court staff may not know the answers to all questions about court rules,
25   procedures, and practices...(court staff) have been instructed not to answer questions if
26   (they) do not know the correct answers. For additional information, (litigants should)
27   contact a lawyer or (their) local law library, or check the California Courts Self-Help
28   Center Web site at www.courtinfo.ca.gov."

Complaint for damages and equitable relief                                              - 9 -

40.     Plaintiff alleges on information and beliefs that Abueg knew that her numerous
refusals to let plaintiff file his lawsuit were unlawful under state law.

**July 23, 2007**

41.     On July 23, plaintiff mailed a motion to the Presiding Judge, David Power. In
this motion, plaintiff respectfully requested his case not be assigned to a temporary
judge, exercising a right spelled out in the CA Constitution (Article VI, Sec. 21).
Plaintiff did not want his case assigned to a temporary judge because of past experience
with temporary judge that had failed to recuse herself during circumstances when a
recusal would have been proper. Copies of the motion were mailed to the Clerks' Office
and the defendant, Trester, whom had been named the defendant in his capacity as a
Real Estate Broker.

42.     Plaintiff alleges on information and beliefs that Trester was at the time, and had
been in the recent past, a volunteer temporary judge for the Superior Court of California.

43.     Plaintiff alleges on information and beliefs that sometime immediately after
receiving a copy of the plaintiff's motion on, or before, July 26, but before service on
July 31, Trester initiated ex parte contact with Power; that Trester asked for Power's
help with having plaintiff's lawsuit forced into binding arbitration, or thrown out on a
fabricated technicality, or dismissed with prejudice by the court; and that Trester knew
he and John Palmer risked losing their licenses if he lost plaintiff's small claim action,
as plaintiff had alleged fraud as a cause of action.

44.     Pursuant to California Business and Professions Code, Sec. 10177.5," When a
final judgment is obtained in a civil action against any real estate licensee upon grounds
of fraud, misrepresentation, or deceit with reference to any transaction for which a
license is required under this division, the commissioner may, after hearing in
accordance with the provisions of this part relating to hearings, suspend or revoke the
license of such real estate licensee."

45.     Plaintiff alleges on information and beliefs that Power immediately agreed to

1    help Trester defeat plaintiff's lawsuit and that Power, Trester, and Palmer acted in

2    collusion towards this goal. Plaintiff alleges on information and beliefs that Power

3    conspired with Trester to manipulate the process to reach an outcome favorable to

4    Trester.

5

6                              **August 3, 2007**

7    46.    On or around August 3, plaintiff received a copy of a letter from Trester. Trester

8    had allegedly mailed the original letter to Presiding Judge Power on August 1. Among

9    other things, Trester threatened to file sanctions against plaintiff pursuant to CA Code of

10   Civil Procedure, Sec. 128.7. Trester also challenged the venue.

11

12                             **August 6, 2007**

13   47.    On August 6, plaintiff filed a motion with the Clerks Office to have Trester's

14   venue challenge quashed. Because Power had not yet made a ruling on plaintiff's

15   motion not to have the case assigned to a temporary judge, plaintiff also included

16   another copy of the July 23 motion, which had been filed according to California Code

17   of Civil Procedure, Sec. 116.130[h]. The Process Clerk said she would forward the

18   motions to the Presiding Judge. While at the Clerks Office, plaintiff reviewed his case

19   file. The case file did not include any copies of letters from Trester to the Presiding

29   Judge. Not did the case file include a note to the temporary judge about plaintiff's

21   "refusal" to file a local form on July 19.

22

23                             **August 10, 2007**

34   48.    On August 10, Mark Gelade, plaintiff's supervisor at the AOC, said Bolotte

25   wanted to meet with plaintiff about some "problems" with plaintiff's pending small

26   claims action. Bolotte said to plaintiff that Process Clerks had complained about his July

27   19 filing. Plaintiff informed Bolotte and Gelade that Process Clerks had unlawfully

28   denied plaintiff his legal right to file a lawsuit. Plaintiff then spent roughly an hour

1    answering Bolotte's questions about his small claims action. Among other things,
2    Bolotte wanted to know about plaintiff's motion not to have the case assigned to a
3    temporary judge. Bolotte's questions also resulted in plaintiff having to venture into a
4    detailed explanation about why plaintiff did not want case to go into binding arbitration.
5    Plaintiff clarified to Bolotte that the arbitration clause in the lease agreement was
6    against public policy and non-enforceable. Plaintiff told Bolotte that Trester was an
7    attorney, but had been named the defendant in his capacity as a Real Estate Broker, yet
8    used the letterhead of his law firm in his communications with plaintiff and the Court.
9    Plaintiff communicated to Bolotte plaintiff's belief that defendant had engaged in bad
10   faith tactics. Bolotte immediately replied, "That's his job!" Towards the end of the
11   meeting, Bolotte said to plaintiff that he should consider dropping the small claims
12   action.

13   49.    Plaintiff alleges on information and beliefs that Bolotte attempted to intimidate
14   plaintiff into asking the Court to dismiss the action and that part of Bolotte's purpose
15   with the August 10 meeting was to compile as much information as possible about
16   plaintiff's legal strategy on behalf of the defendant, Trester.

17   50.    Plaintiff alleges on information and beliefs that Bolotte and Gelade lied to
18   plaintiff about Superior Court Clerks having complained to the AOC HR Division about
19   plaintiff's July 19 filing and that they lied about the Process Clerks to prevent plaintiff
29   from discovering that the actual ex parte contacts were between Trester, Power,
21   Superior Court employees on Power's behalf, and employees at the AOC.

22   51.    Immediately after the meeting, Gelade emailed plaintiff a copy of the CA State
23   Bar publication "California Attorney: Guidelines of Civility and Professionalism."
34   Plaintiff alleges on information and beliefs that Gelade emailed plaintiff this
25   information to create a false record of Gelade and other defendants giving plaintiff the
26   tools to complain about a dishonest attorney, such as Trester.

27   52.    Plaintiff alleges on information and beliefs that the Guidelines are not mandatory
28   rules of professional conduct, nor rules of practice, nor standards of care, and that the

1  guidelines cannot be used as an independent basis for disciplinary charges by the State

2  Bar or claims of professional negligence.

3  53. Plaintiff alleges on information and beliefs that defendants arranged to have

4  Gelade email the guidelines to plaintiff because defendants knew the guidelines were

5  harmless vis-à-vis Trester's misconduct; and that if defendants had truly wanted

6  plaintiff to have the tools needed to file an effective complaint against Trester, Gelade

7  would have emailed plaintiff CA Rules of Professional Conduct and the CA State Bar

8  Act (California Business and Professions Code, Sec. 6000 et seq).

9

10          **August 13-16, 2007**

11  54. Bolotte's interviewing plaintiff for about an hour about his pending lawsuit,

12  along with her "suggestion" that plaintiff should consider dropping the lawsuit, made

13  plaintiff feel very uncomfortable, anxious, and depressed. Plaintiff communicated to

14  Gelade in the morning of August 14 that he would drop the lawsuit.

15  55. A few days later, plaintiff received a letter from the Chamber of Presiding Judge

16  Power. The letter was dated August 13, but postmarked August 14. According to the

17  letter, someone had engaged in ex parte communication and therefore, letters from

18  plaintiff, Trester, and Palmer were being returned to them. Plaintiff alleges on

19  information and beliefs that Power and Trester had involved Palmer to help create a

29  false record; that Power and Trester manipulated the process to make it appear that

21  Power had everyone's letters mailed back to them because Trester's agent had attempted

22  ex parte communication with the Presiding Judge; and that Power and Trester

23  deliberately set out to create a false record vis-à-vis how serious Presiding Judge Power

34  was about ex parte communication not being acceptable; while at the same time making

25  it appear that the ex parte communication had not been between Power and Trester, but

26  an attempt of ex parte communication by Palmer, who wasn't an actual party, but

27  Trester's agent.

28  56. In a letter dated August 16, Palmer offered to settle the dispute on behalf of

1    Trester. Because plaintiff had already decided to have the case dismissed before the

2    hearing date (scheduled for September 7), plaintiff agreed to a settlement amount a

3    fraction of what he would otherwise have accepted.

4

5                                    **August 23, 2007**

6    57.    On August 23, plaintiff overheard Peter Allen talk about a phone meeting with a

7    judge that same afternoon. Later that day, plaintiff participated in a last minute meeting

8    on a different floor. While heading for this meeting, plaintiff observed Bolotte enter the

9    conference room on the floor that she, plaintiff, and Allen all worked.

10    58.    Plaintiff's meeting started around 3:30 p.m. Participants included Gelade,

11    Treige, and two other AOC employees. Around, or shortly after 4:00 p.m. Gelade left

12    the conference room for an estimated 30 – 45 minute cell phone conversation right

13    outside the glassed conference room where plaintiff, Treige, and the other two

14    participants continued their meeting.

15    59.    Plaintiff alleges on information and beliefs that ex parte communication between

16    AOC and Superior Court staff included a phone meeting in the afternoon of August 23;

17    and that participants included, but may not have been limited to, Allen, Bolotte, and

18    Gelade from the AOC, and Power, Taylor, Passon from the Superior Court, and DOES

19    1-20.

29    60.    Plaintiff alleges on information and beliefs that plaintiff was whisked away by

21    Treige and Gelade to the last minute meeting on a different floor to reduce the risk of

22    plaintiff finding out about the Superior Court – AOC phone conference downstairs. The

23    outcome of the meeting in which plaintiff and Treige participated on August 23 was that

34    Treige decided that the Web Communications Group ("WCG") should stick to the exact

25    same plan that the WCG had agreed upon in the days before the August 23 meeting.

26

27                                    **August 30, 2007**

28    61.    On August 30, around 10:30 a.m., plaintiff received a call from Bayangos in the

1    AOC HR Division. Bayangos asked plaintiff to attend a meeting at 1:30 p.m. Around

2    11:00 a.m., Gelade asked plaintiff to come to Gelade's office to talk about the upcoming

3    meeting. Gelade told plaintiff the upcoming meeting was about the complaint over

4    plaintiff's July 19 filing. Gelade referred to the matter as a "tempest in a tea cup," and

5    explained that it meant that somebody was making a big deal over nothing. Gelade went

6    on to describe the upcoming meeting as a "public hazing" and advised plaintiff to just

7    go in and "take the lashes." Gelade warned plaintiff against arguing the facts,

8    communicating that arguing the facts would make things worse for plaintiff. Plaintiff

9    communicated to Gelade plaintiff's belief that the meeting was "more about the

10   Presiding Judge than it was about (plaintiff)." Gelade immediately got tense,

11   uncomfortable, and silent, but did not deny this.

12   62.    Bolotte, Gelade, Bayangos, and a representative from AppleOne were present at

13   the 1:30 p.m. meeting. Bolotte gave plaintiff an Incompatible Activities Statement. The

14   footer of the statement revealed that the Incompatible Activities Statement had been

15   authored on August 24.

16   63.    California Government Code, Sec. 19990 reads in part, "Each appointing power

17   shall determine, subject to approval of the department, those activities which, for

18   employees under its jurisdiction, are inconsistent, incompatible or in conflict with their

19   duties as state officers or employees…The department shall adopt rules governing the

29   application of this section. The rules shall include provision for notice to employees

21   prior to the determination of proscribed activities and for appeal by employees from

22   such a determination and from its application to an employee."

23   64.    Bolotte knew she acted beyond the scope of her authority when giving an

34   Incompatible Activities Statement to plaintiff, who wasn't a state employee. Bolotte

25   knew that under state law, an Incompatible Activities Statement shall be given before

26   the determination of proscribed activities and shall include a notice of for appeal from

27   an incompatible activities determination. Bolotte knew she denied plaintiff his right to

28   petition the government for redress of grievances by not including in the Incompatible

1      Activities Statement information about how plaintiff could appeal an incompatible

2      activities determination. Bolotte knew that plaintiff had not used his AOC affiliation for

3      personal gain or influence on July 19 and she knew that the Incompatible Activities

4      Statement placed plaintiff in a false light, which is why she recruited Gelade to

5      intimidate plaintiff before the meeting.

6      65.    Plaintiff alleges on information and beliefs that the Incompatible Activities

7      Statement given to plaintiff on August 30 had been a matter included in the Superior

8      Court – AOC phone conference on August 23; and that the statement's purpose was to

9      discredit plaintiff and remove attention away from the ex parte communication that had

10     taken place between Bolotte, Power, Trester, and the other defendants.

11

12                              **August 31, 2007**

13     66.    On August 31, a Friday, plaintiff received a phone call right around 4 p.m. The

14     call was from Palmer. Plaintiff took the phone call in a semi-secluded area of a public

15     hallway. Palmer was eager to have plaintiff sign the Settlement Agreement before the

16     September 7 hearing date. Plaintiff had so far refused to sign the agreement because

17     plaintiff's instincts told him the agreement had been created in bad faith, though at the

18     time plaintiff had not yet discovered for what purpose. Palmer and plaintiff decided to

19     meet the following Tuesday, September 4. As plaintiff ended the phone call, he

29     discovered Bolotte right around the corner, eavesdropping on plaintiff's phone

21     conversation. Bolotte quickly escaped through a side door.

22     67.    Plaintiff alleges on information and beliefs that Bolotte knew that Palmer would

23     call plaintiff that afternoon and that Bolotte eavesdropped on their conversation on

34     purpose to learn first hand if the Settlement Agreement would be signed before the

25     hearing date the following week; that the "Settlement Agreement" had been designed in

26     consultation with Bolotte and other co-conspirators from the Superior Court and the

27     AOC for the purpose of protecting them in case of litigation; that Bolotte and her co-

28     conspirators had willingly and knowingly acted beyond the scope of their authority, in

1     willful violation of law, and with malice; and that Bolotte and other defendants knew

2     they could not rely on the Judicial Branch Litigation Management Program to defend

3     them in court if plaintiff found out about the conspiracy to defraud and deprive him of

4     his rights and subsequently filed law suits against the co-conspirators.

5     68.       Pursuant to California Government Code, Sec. 995.2, "A public entity may

6     refuse to provide for the defense of a civil action or proceeding brought against an

7     employee or former employee if the public entity determines any of the following: (1)

8     The act or omission was not within the scope of his or her employment. (2) He or she

9     acted or failed to act because of actual fraud, corruption, or actual malice."

10

11                                 **September 4-9, 2007**

12     69.       On September 4, plaintiff met with Palmer. Plaintiff suggested a different

13     settlement agreement, which Palmer rejected unless it included a paragraph designed to

14     prevent or discourage future litigation. Palmer made a comment about plaintiff being a

15     "foreigner" and then went on to explain that being a "foreigner" meant that plaintiff

16     didn't understand how an American court worked. Palmer said plaintiff had no chance

17     of winning the pending court case. Palmer asserted that all that was needed to make

18     plaintiff lose plaintiff's small claim action against Trester was for Palmer to show up at

19     the hearing and let the judge know that Palmer was a professional Property Manager.

29     Plaintiff alleges on information and beliefs that as a last resort, Trester, Power, Bolotte,

21     and the other co-conspirators had made arrangements for having the case dismissed with

22     prejudice by the Court at, or immediately after, the September 7 hearing; and that the

23     co-conspirators had agreed to have Palmer make an appearance at the hearing and make

34     a statement to hearing officer, that way creating a false record that the case had been

25     dismissed with prejudice for legitimate, legal reasons. Plaintiff refused to sign the

26     agreement and there was no settlement.

27     70.       On September 5, plaintiff filed to have the small claim action dismissed without

28     prejudice. Also on September 5, plaintiff made a request for AOC records vis-à-vis the

1    Superior Court – AOC ex parte communication and the August 23 meeting in which
2    Peter Allen and a judge participated.

3    71.    On September 9, plaintiff asked his employer to be assigned to a different client
4    than AOC because the ex parte communication between employees of the Superior
5    Court and the AOC had had a negative impact on plaintiff's health.

7                                **September 13-14, 2007**

8    72.    On September 13, Gelade called plaintiff at home. Gelade wanted to know why
9    plaintiff requested AOC records on September 5. Plaintiff confirmed he wanted to file
10   complaints against Judicial Branch employees involved in the ex parte communication.
11   Gelade said that he didn't "think they'll give them" (the records) to plaintiff. Gelade
12   voluntarily brought up the status of plaintiff's legal dispute with Trester and specifically
13   asked, "What happened? I thought you were suppose to settle!" Plaintiff had not told
14   Gelade that there had been no settlement, so that there had been no settlement was a fact
15   that Gelade had learned from someone other than plaintiff. Gelade also wanted to know
16   how plaintiff knew that Allen had had a phone conference with a judge on August 23
17   and about plaintiff's current employment status with AppleOne.

18   73.    Plaintiff alleges on information and belief that immediately after Gelade (and
19   other defendants and co-conspirators) learned of plaintiff's intention to file complaints
29   against Superior Court and AOC employees that had been involved in ex parte
21   communication about plaintiff and his court case, Gelade and others engaged in a
22   conspiracy and cover-up. Their purpose was to try to prevent plaintiff from filing
23   successful complaints with the Judicial Branch Internal Audit Services, the CA State
34   Bar, the Arizona State Bar, and the CA Commission on Judicial Performance; and law
25   suits against co-conspirators once plaintiff learned the details of their wrongs.

26   74.    Plaintiff has since September 2007 been denied detailed information about the
27   August 23 meeting. Plaintiff alleges on information and beliefs that defendants since
28   September 5 have taken several steps to create a false record vis-à-vis the August 23

Complaint for damages and equitable relief                                                    - 18 -

1    meeting and that this false record has been deliberately designed to explain away

2    evidence that Power participated in the August 23 meeting and that the meeting was part

3    of defendants conspiracy to defraud plaintiff.

4    75.    Plaintiff alleges on information and beliefs that as part of this false record,

5    defendants had a last minute addition made to an article appearing in the Fall 2007

6    edition of the Solano County Bar Association ("SCBA") magazine. The magazine was

7    released on, or right before, November 7, 2007. The magazine included an article by

8    Power. The paragraph at the end of the article states that, "Cynthia Passon is the Senior

9    Management Analyst for the Executive Office, Superior Court of California, County of

10    Solano. Judge Power and Brian Taylor also conributed [sic.] to the article."

11    76.    Plaintiff alleges on information and beliefs that the Fall 2007 magazine has

12    recently been made unavailable from the SCBA website.

13    77.    Plaintiff alleges on information and beliefs that the typo in the paragraph

14    ("conributed") indicates that the graphic designer revised or added the paragraph

15    towards the end of the magazine production cycle, right before the magazine went to

16    print, and that the typo appeared because the paragraph was added so late into the

17    production cycle that nobody had time to proof read (copy edit) the final pre-print

18    version.

19    78.    Plaintiff alleges on information and beliefs that this last minute revision was

29    made as a way for defendants to "explain" why phone records provide evidence of a

21    long phone conversation between Solano County Superior Court staff (in the Court

22    Executive Office) and Allen at the AOC on August 23. The paragraph does not actually

23    say that Passon contributed to the article, only that "Cynthia Passon is the Senior

34    Management Analyst for the Executive Office, Superior Court of California, County of

25    Solano." Plaintiff alleges on information and beliefs that defendants planted this false

26    record in the SCBA magazine so that defendants could later allege that the other person

27    that "contributed" to the magazine was Peter Allen.

28    79.    Plaintiff included a copy of the Fall 2007 SCBA article with the Judicial Branch

1    Claims filed with the AOC and the Superior Court Executive Office in January 2008.
2    Plaintiff alleges on information and beliefs that the Superior Court Executive Office
3    involved the SCBA in defendants' attempts to create a false record about the August 23
4    phone conference by having the SCBA add the following paragraph to its website: "The
5    magazine is absolutely awesome. Informative, polished, professional, excellent
6    publication. You have done an outstanding job. I am proud to have made a contribution
7    to the first issue. (And how cool that you included my name, I am grateful) - Cynthia T.
8    Passon, Senior Management Analyst, Superior Court of California."
9    (http://www.solanobar.org/magazine.htm). Plaintiff alleges on information and beliefs
10   that the verbiage was designed to later explain that Passon having "made a contribution"
11   did not necessarily mean that Passon had help write or draft the article.

12   80.    Plaintiff alleges on information and beliefs that the Temporary Judge program in
13   Solano County is run by the SCBA; that the SCBA receives funding from the Superior
14   Court to run the Temporary Judge program; that the SCBA has used the Temporary
15   Judge funding to finance and promote the business interests of its attorney members, for
16   example the financing of its Attorney Referral Service; that the Superior Court
17   Executive Office has been directly involved with helping the SCBA defraud the State of
18   CA of hundreds of thousands of dollars; that Taylor has during his tenure as Court
19   Executive Officer had a role in SCBA defrauding the State of CA; and that Taylor on
29   May 6, 2008 sent plaintiff a fraudulent record in the form of a fabricated Superior
21   Court-SCBA grant application / agreement.

22   81.    On September 14, plaintiff receives a phone call from Sommer, an attorney in
23   the AOC Office of General Counsel ("OGC"). Sommer asked a few questions about the
34   AOC records plaintiff had requested on September 5. Sommer misrepresented that he
25   had called to help plaintiff with his records request. Sommer did not during this phone
26   conversation, and at no point during his many contacts with plaintiff during October
27   2007 – January 2008, say to plaintiff that his contacts with plaintiff were a matter of
28   Sommer acting in his capacity as an attorney representing a client.

82.    Plaintiff alleges on information and beliefs that the OGC is not normally involved in public records requests and that public record requests are handled by the AOC Office of Communications in the EOP Division, lead by Kenneth Kann and Dianne Bolotte.

**Requesting records from AOC: September – October 2007**

83.    Plaintiff alleges on information and beliefs that an ongoing conspiracy to deprive plaintiff of his rights may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged co-conspirators; and that the conspiracy included, but may not have been limited to, the following.

84.    Plaintiff's requests for public records were either unnecessarily delayed or unlawfully denied. For example, plaintiff's requests for a copy of the "Court Administration Reference Manual: A comprehensive guide to the administrative duties of presiding judges and court executive officers" available on the Judicial Branch intranet at http://serranus.courtinfo.ca.gov/reference/carm/.

85.    Other members of the public who requested records from the AOC were assisted by employees from the Office of Communications in the EOP Division. With only a few exceptions, all of plaintiff's requests were handled by Sommer in the OGC, whose duties include in-house counsel. According to correspondence from Sommer, Sommer handled no other public record requests during fall of 2007 than those of plaintiff.

86.    Bolotte, Bayangos, and Sommer used plaintiff's requests in an attempt to create a false record of events.

87.    On September 28, Bayangos showed plaintiff four "redacted" records in the AOC HR Division. They were (1) an email dated August 7, 2007, from unknown DOE to other unknown DOE/S, (2) a Written Declaration allegedly authored and signed by Justina Abueg on July 20, 2007, (3) a Written Declaration allegedly authored and signed by "KK" on July 20, 2007, and (4) a Written Declaration allegedly authored and

1    signed by unknown DOE on July 24, 2007. Plaintiff alleges on information and beliefs

2    that the Written Declaration allegedly authored and signed by "KK" on July 20, 2007

3    was attributed to Kerry Krumpen, Process Clerk in the Superior Court Vallejo

4    Civil/Small Claims Division (though not authored by Krumpen).

5    88.    Before plaintiff began the inspection of these records on September 28, plaintiff

6    asked Bayangos to confirm that plaintiff was allowed to reproduce the records during

7    the inspection. Plaintiff confirmed that reproduce meant copy. Bayangos confirmed

8    plaintiff was allowed to copy the records. Plaintiff began by taking some notes. Plaintiff

9    then took out his digital camera to take pictures of the records. Bayangos became irate,

10    yelled at plaintiff that he "can't do that." Plaintiff told Bayangos that she had confirmed

11    he could copy the records. Bayangos tried to pull the records away from plaintiff.

12    Bayangos then got on the phone, told the person who answered on the other end that

13    plaintiff was "taking pictures," and asked "is he allowed to do that?" Bayangos then

14    violently pulled the records out of plaintiff's hands and stormed out of the room.

15    Bayangos volatile and violent behavior frightened plaintiff and made him fear for his

16    personal safety.

17    89.    On March 1, 2008, plaintiff made a discovery that explained why the "redacted"

18    records he had inspected on September 28, and the even more redacted versions of these

19    "redacted" records mailed to plaintiff by Sommer the following week, included so many

29    details contrary to the truth. The records had been fabricated, as defined by, for

21    example, the California Penal Code.

22    90.    California Penal Code, Sec. 134, "Every person guilty of preparing any false or

23    ante-dated book, paper, record, instrument in writing, or other matter or thing, with

34    intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as

25    genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is

26    guilty of felony."

27    91.    Bayangos and Sommer had attempted to make plaintiff believe that Abueg had

28    authored and signed a Written Declaration on July 20, 2007 and that only four pieces

1       had been "redacted" from the copy of the Written Declaration given to plaintiff. One,
2       Abueg's name; Two, Trester's name; Three, the case number; and Four, Abueg's
3       signature. Plaintiff alleges on information and beliefs that Abueg did not author a
4       Written Declaration on July 20, 2007; if Abueg authored a Written Declaration at all,
5       she authored it at a later date; the "redacted" Abueg Written Declaration had been
6       authored by someone other than Abueg at a much later date and without Abueg's
7       knowledge; the content of the Abueg "Written Declaration" Bayangos showed plaintiff,
8       and the even more redacted version Sommer gave to plaintiff, did and could not match
9       the content of the Abueg Written Declaration attached to the August 7 email as a Word
10      file; the alleged Abueg Written Declaration had been authored by an attorney without
11      Abueg's knowledge; and the Abueg Written Declaration, along with the other records,
12      had been authored by attorneys, ante-dated, for the purpose of creating a false record
13      about plaintiff's July 19 filing and the ex parte communication between Superior Court
14      and AOC employees.

15      92.     For example, according to the "redacted" records, Abueg had told plaintiff that a
16      note would be added to the court case file over plaintiff's "refusal" to file the local form
17      on July 19. Abueg never said anything about a note. According to the Written
18      Declaration authored by unknown DOE, a note had been added to the case file.

19      93.     The truth is that no note was ever added to case file. Plaintiff reviewed his case
29      file on August 6. There was no note in the case file at that time. Plaintiff had a copy
21      made of everything in this case file on October 1. There was no note in the case file at
22      this point either. Plaintiff later asked Abueg for a copy of this alleged note. Taylor got
23      back to plaintiff on Abueg's behalf and refused plaintiff a copy of the note allegedly to
34      the case file.

25      94.     Plaintiff alleges on information and beliefs that according to Superior Court
26      policy, litigants have a right to review content in their case files; the fabricated Written
27      Declarations had been prepared fraudulently and with the intent to create a false record
28      vis-à-vis the ex parte communication between the Superior Court and the AOC; and that

1     the content of the August 7, 2007 email had been modified to create a false record vis-à-

2     vis why Power had not ruled on plaintiff's July 23 motion.

3     95.     The unknown author of Abueg's Written Declaration entertained serious doubts

4     as to the truth of the publication and published it with reckless disregard for truth or

5     falsity and with actual malice, including but not limited to, writing that plaintiff had said

6     to Abueg "I work at the AOC. Here's my badge," and that plaintiff had started to

7     present his badge. Plaintiff has suffered loss of reputation, shame, mortification and hurt

8     feelings as a result. Plaintiff continues to experience shame, mortification, and hurt

9     feelings due to not having had the opportunity to clear his name and restore his

10     reputation.

11

12     **Requesting records from Solano County: November – December 2007**

13     96.     In November 2007, plaintiff ascertained that Superior Court records were

14     available on the Solano County email server/s, and thus subject to the CA Public

15     Records Act, as the act applies to counties, but not to the state judicial branch.

16     97.     On November 15, plaintiff requested the following records from the County of

17     Solano pursuant to the CA Public Records Act.

18        o    "All emails on the Solano County incoming and outgoing email server/s sent

19            from *@solanocourts.com to *@jud.ca.gov (and vice versa) between July 19,

29            2007 and November 14, 2007"

21        o    "An email on the Solano County outgoing email server/s (or from backup tapes)

22            that was sent Tuesday, August 7, 2007 at 2:04 p.m. The sender's email suffix

23            was most likely *@solanocourts.com. Email subject line reads 'RE: Alternative

24            Dispute Resolution.' The email includes four attachments (three Word files and

25            one PDF)."

26     98.     Plaintiff had sent public record request to County of Solano IT staff. At first,

27     plaintiff's request was ignored. Then, County Counsel's office tried to mislead plaintiff

28     about whether or not Solano County was in possession of the records. Eventually,

1   County Counsel Dennis Bunting confirmed the County maintained the requested
2   records, but refused plaintiff access to the records.

3   99.     Bunting alleged in December 12 letter to plaintiff that the records plaintiff
4   sought "are not a 'judicial record' as defined in Code of Civil Procedure, Sec. 1904."
5   Plaintiff alleges on information and beliefs that Bunting's reference was unrelated to the
6   California Public Records Act, and really about California Code of Civil Procedure,
7   Sec. 1916.

8   100.    California Code of Civil Procedure, Sec. 1916, "Any judicial record may be
9   impeached by evidence of a want of jurisdiction in the Court or judicial officer, of
10  collusion between the parties, or of fraud in the party offering the record, in respect to
11  the proceedings."

12  101.    Bunting included Sue Hansen at the AOC in an email exchange between Bunting
13  and plaintiff. Plaintiff alleges on information and beliefs that Hansen is an attorney in
14  the AOC Office of General Counsel; that Hansen is assigned to the Superior Court of
15  CA, County of Solano under the Judicial Branch Litigation Management Program; and
16  that Bunting included Hansen pursuant to California Rule of Court 10.202 (Judicial
17  Branch Claims and Litigation Management).

18  102.    California Rule of Court 10.202 reads in part, "Duties of the Office of the
19  General Counsel…(To) provide legal assistance to the trial or appellate court, and to any
29  justice, judge, subordinate judicial officer, court executive officer or administrator, and
21  trial or appellate court employee who is named as a defendant or responsible party."

22  103.    Plaintiff alleges on information and beliefs that Bunting made the reference to
23  California Code of Civil Procedure, Sec. 1904 and included Hansen in the email
24  exchange because the requested records are evidence of collusion and fraud; and that
25  Bunting also included Taylor in the email exchange because Taylor is directly involved
26  in the collusion and fraud.

27  104.    Bunting wrote plaintiff in an email on December 16 that, "*We will not permit an*
28  *inspection of the records, absent a* waiver from our client, the Solano County Superior

1    Court or the AOC, or *a court order*." (Bold italics added).

2    105.    Plaintiff alleges on information and beliefs that Bunting is a former Solano

3    County judge that worked as a judge in Solano County at the same time as Power during

4    the early 1990s; that Power and Bunting have known each other for at least a decade;

5    and that Bunting and Taylor know each other.

6    106.    Plaintiff alleges on information and beliefs that Bunting cited California Code of

7    Civil Procedure, Sec. 1904 and copied Sue Hansen in the AOC Office of General

8    Counsel because Bunting had discovered that the requested records are evidence of

9    collusion and fraud; and that Bunting's actions were not based on legal authority found

10   in the California Public Records Act, but directly linked to Bunting's role as County

11   Counsel pursuant to the California Tort Claims Act (Government Code, Sec. 810 et

12   seq).

13   107.    California Government Act, Sec. 811.9(a), "Notwithstanding any other provision

14   of law, judges, subordinate judicial officers, and court executive officers of the superior

15   courts are state officers for purposes of Part 1 (commencing with Sec. 810) to Part 7

16   (commencing with Sec. 995), inclusive, and trial court employees are employees of the

17   trial court for purposes of Part 1 (commencing with Sec. 810) to Part 7 (commencing

18   with Sec. 995), inclusive. The Judicial Council shall provide for representation, defense,

19   and indemnification of those individuals and the court pursuant to Part 1 (commencing

29   with Sec. 810) to Part 7 (commencing with Sec. 995), inclusive. *The Judicial Council*

21   *shall provide for that representation or defense through the county counsel*, the

22   Attorney General, or other counsel. The county counsel and the Attorney General may,

23   but are not required to, provide representation or defense for the Judicial Council."

34   (Bold italics added).

25

26   **Some of the Harm Caused by Publication with Reckless Disregard for Truth or**

27   **Falsity and with Actual Malice: December 2007 – January 2008**

28   108.    On December 7, 2007, plaintiff's former employer AppleOne presented

1   Bolotte's Incompatible Activities Statement as "evidence" at a government hearing that

2   plaintiff's employment had been terminated as a result of plaintiff's misconduct.

3   109.    On January 9, 2008, plaintiff's former employer AppleOne testified under

4   penalty of perjury that an AOC employee, whom plaintiff alleges on information and

5   beliefs was Bayangos, had contacted AppleOne sometime right before August 30.

6   According to AppleOne's testimony, the AOC employee had told AppleOne that

7   plaintiff on July 19 "had left early in order to go take care of a personal matter..he had

8   actually went [sic.] to file a complaint with Solano County court...he actually went in

9   flashing his badge there because he didn't like the way the paperwork was being

10  processed, so he said, 'I work for the Judicial Council'." These defamatory statements

11  were made by an AOC employee, which plaintiff alleges was Angela Bayangos, with

12  reckless disregard for truth or falsity and with actual malice.

13

14                  **Presenting Claims to CA Judicial Branch: January 2008**

15  110.    Plaintiff filed claims with the California Judicial Branch the week of January 14,

16  2008. That same week, plaintiff received antedated correspondence from Taylor.

17  Plaintiff alleges on information and beliefs that Taylor through the antedated letter

18  attempted to create a false record vis-à-vis plaintiff having submitted claims pursuant to

19  the California Tort Claims Act.

29  **111.**    Taylor, other defendants, and co-conspirators had acted outside the scope of

21  their employment, acted because of fraud, and with malice. Plaintiff alleges on

22  information and beliefs they knew that the AOC Office of General Counsel could

23  lawfully and legitimately refuse to provide for the defense of a civil action or

34  proceeding brought against them as employees (or former employees) pursuant to

25  California Government Code, Sec. 995.2; and that Taylor and other defendants,

26  including DOES 1-20, as a first line of defense, attempted to create a false record vis-à-

27  vis the claims plaintiff had submitted to the California Judicial Branch. Staff at the AOC

28  engaged in the very same bad-faith tactics.

1    112.    On January 7, 2008, plaintiff gave Sue Hansen notice of his intention to file a

2    claim. Hansen made arrangements for plaintiff to pick up claim forms at the Judicial

3    Council. The claim forms instructed claimant to "deliver or mail this claim form to"

4    Judicial Council Secretariat on the third floor at 455 Golden Gate Avenue, San

5    Francisco, California.

6    113.    On January 14, plaintiff went to 455 Golden Gate in San Francisco to deliver his

7    claim in person. When plaintiff arrived at Secretariat on the third floor, the receptionist

8    would not accept the claim form, but instructed plaintiff to go to the fifth floor in a

9    different wing of the building complex and wait for Nancy Spero. Plaintiff arrived on

10   the fifth floor and waited for Spero, who showed up after a few minutes. Spero, a senior

11   attorney in the Executive Office Programs Division ("EOP") whose superiors are

12   Bolotte and Kann, instructed plaintiff to hand over the claim to her. Spero refused to

13   give plaintiff a receipt, a stamped copy of the claim form, or even her business card.

14   Spero said it was enough that plaintiff "knew her name." When plaintiff wanted to give

15   Spero a check for the $25 filing fee, Spero didn't know what to do and had to go back to

16   the EOP office to get instructions. Spero returned after a few minutes and said to

17   plaintiff that no filing fee was necessary, which was contrary to what plaintiff had been

18   told by an AOC employee the previous week. Plaintiff refused to hand over claim to

19   Spero without a receipt or stamped claim form as proof that claim had been presented.

29   Plaintiff left the AOC without having had the claim accepted. Plaintiff later mailed the

21   claim to the Secretariat of the Judicial Council on the third floor, since AOC staff had

22   refused to accept the claim when plaintiff wanted to deliver the claim in person to the

23   Secretariat of the Judicial Council on the third floor.

34   114.    Pursuant to California Government Act, Sec. 915, "A claim...shall be presented

25   to a judicial branch entity in accordance with the following means...Delivering or

26   mailing it to the Secretariat of the Judicial Council, if against the Judicial Council or the

27   Administrative Office of the Courts."

28   115.    Plaintiff alleges on information and beliefs that AOC employees conspired to

1     trick plaintiff into giving his claim to Spero, an employee in the EOP Division whose
2     superiors are Bolotte and Kann, that way (1) preventing AOC leadership from finding
3     out about defendants' wrongs and (2) providing the OGC the means to challenge
4     plaintiff's lawsuit because plaintiff had not presented the claim to the Judicial Council
5     Secretariat on the third floor - as required by CA Government Code, Sec. 915(c)(4) and
6     the Judicial Branch claim form - but handed over the claim to an employee on the fifth
7     floor without authority to accept the claim.

8     116.    Though the AOC Office of General Counsel eventually recognized that it had
9     received plaintiff's claims, plaintiff alleges on information and beliefs that the claim
10     content reviewed by the Judicial Branch Claims and Litigation Management Program
11     was not identical to the content of the claims plaintiff had presented to Judicial Branch
12     entities in accordance with the California Tort Claims Act.

13     117.    Plaintiff alleges on information and beliefs that AOC and Superior Court
14     employees manipulated the content of plaintiff's claims to conceal their own wrongs,
15     eliminate records with details about their own wrongs, and destroy evidence of their
16     own wrongs, including the fabricated, false records Sommer had mailed to plaintiff in
17     early October 2007.

18

19     118.    Defendants acted oppressively, fraudulently, maliciously and in willful and
29     conscious disregard of plaintiff's rights, and with the intention of causing, or in reckless
21     disregard of the probability of causing, injury and emotional distress to the plaintiff. As
22     a legal result of the conduct of the defendants, plaintiff suffered and continues to suffer
23     substantial losses in earnings, in addition to other monetary harm. As a legal result of
34     the conduct of the defendants, plaintiff suffered emotional distress. Plaintiff suffered
25     mental distress, suffering and anguish as a legal result of defendants' outrageous
26     conduct, reacting to their wrongs with humiliation, embarrassment, anger,
27     disappointment and worry, all of which is substantial and enduring. As a legal result of
28     the conduct of the defendants, suffering and anguish emotional distress harm to

Complaint for damages and equitable relief              - 29 -

1    reputation or shame, mortification or hurt feelings,

2

3                  **FIRST CAUSE OF ACTION (42 U.S.C. Sec. 1983)**

4        Deprivation of 1st Amendment Right to Petition Government for Redress of Grievances

5                            (Against Abueg and DOES 1-20)

6        119.    Plaintiff hereby incorporates by reference all previous paragraphs of this

7        complaint as if fully set forth herein.

8        120.    The Petition Clause of the 1st Amendment to the US Constitution guarantees the

9        right to petition the government for redress of grievances.

10       121.    Filing a lawsuit is an exercise of the constitutional right to petition.

11       122.    Justina Abueg deprived plaintiff of his constitutional around 8:15 a.m. on July

12       19, 2007 at the Court Clerk's office on 321 Tuolumne Street in Vallejo, California.

13               WHEREFORE, Plaintiff seeks relief as set forth below.

14

15               **SECOND CAUSE OF ACTION (42 U.S.C. Sec. 1985)**

16                  Conspiracy to Interfere with Civil Rights; Intimidating Party

17       (Against Allen, Bolotte, Gelade, Kann, Palmer, Passon, Power, Taylor, Treige, Trester,

18                                and DOES 1-20)

19       **123.**   Plaintiff hereby incorporates by reference all previous paragraphs of this

29       complaint as if fully set forth herein.

21       124.    Defendants conspired to deter plaintiff by intimidation from attending court as a

22       party.

23       **125.**   Bolotte deterred plaintiff from attending court as a party by intimidation around

34       10:20 a.m. on August 10, 2007 in her office on 455 Golden Gate Avenue in San

25       Francisco, California.

26       126.    Plaintiff was harmed by co-conspirators' constitutional torts.

27       127.    Defendants are responsible for the harm because they were part of a conspiracy

28       to interfere with plaintiff's civil rights.

1    **128.** All defendants who agreed to a common plan or design are liable, including

2    defendants who committed no overt act and gained no benefit therefrom.

3    129. Plaintiff suffered monetary damages and emotional distress.

4    130. Defendants are responsible for plaintiffs' harm because they were part of an

5    agreement by two or more persons to commit a wrongful act.

6    **131.** Defendants who entered into the conspiracy after its inception are in law a party

7    to every act previously or subsequently done by any of the other co-conspirators.

8    WHEREFORE, Plaintiff seeks relief as set forth below.

10    **THIRD CAUSE OF ACTION (42 U.S.C. Sec. 1985)**

11    Conspiracy to Interfere with Civil Rights; Obstructing Justice

12    (Against Allen, Bolotte, Gelade, Kann, Palmer, Passon, Power, Taylor, Treige, Trester,

13    and DOES 1-20)

14    132. Plaintiff hereby incorporates by reference all previous paragraphs of this

15    complaint as if fully set forth herein.

16    133. Defendants conspired for the purpose of impeding, hindering, obstructing, or

17    defeating, in any manner, the due course of justice, with intent to deny plaintiff the

18    equal protection of the laws.

19    **134.** Plaintiff was harmed by coconspirators' constitutional torts.

29    135. Defendants are responsible for the harm because they were part of a conspiracy

21    to interfere with plaintiff's civil rights.

22    **136.** Defendants who entered into the conspiracy after its inception are in law a party

23    to every act previously or subsequently done by any of the other co-conspirators.

34    WHEREFORE, Plaintiff seeks relief as set forth below.

1         **FOURTH CAUSE OF ACTION (42 U.S.C. Sec. 1983)**

2     Conspiracy to Deprive 1st Amendment Right to Petition Government for Redress of

3                    Grievances

4     (Against Allen, Bolotte, Gelade, Kann, Palmer, Passon, Power, Taylor, Treige, Trester,

5                    and DOES 1-20)

6     137.    Plaintiff hereby incorporates by reference all previous paragraphs of this

7     complaint as if fully set forth herein.

8     138.    The Petition Clause of the 1st Amendment to the US Constitution guarantees the

9     right to petition the government for redress of grievances.

10     139.    Filing a lawsuit is an exercise of the constitutional right to petition.

11     140.    Defendants conspired to deprive plaintiff of his right to have his petition heard in

12     open court, its merits determined by law, and its outcome based on evidence.

13         WHEREFORE, Plaintiff seeks relief as set forth below.

14

15            **FIFTH CAUSE OF ACTION (42 U.S.C. Sec. 1986)**

16                 Neglect to Prevent

17             (Against Kann and DOES 1-20)

18     141.    Plaintiff hereby incorporates by reference all previous paragraphs of this

19     complaint as if fully set forth herein.

29     142.    Plaintiff alleges on information and beliefs that Kann had knowledge of the

21     wrongs conspired to be done and about to be committed and that Kann had the power to

22     prevent or aid in preventing the commission of the same.

23     143.    Plaintiff alleges on information and beliefs that Kann neglected or refused to do

34     so.

25     144.    Plaintiff alleges on information and beliefs that Kann by reasonable diligence

26     could have prevented the wrongs.

27         WHEREFORE, Plaintiff seeks relief as set forth below.

28

| | |
|---|---|
| 1 | **SIXTH CAUSE OF ACTION (42 U.S.C. Sec. 1983)** |
| 2 | Deprivation of 1st Amendment Right to Petition Government for Redress of Grievances |

1 | **SIXTH CAUSE OF ACTION (42 U.S.C. Sec. 1983)**

2 | Deprivation of 1st Amendment Right to Petition Government for Redress of Grievances

3 | (Against Bolotte and DOES 1-20)

4 | 145.    Plaintiff hereby incorporates by reference all previous paragraphs of this

5 | complaint as if fully set forth herein.

6 | 146.    Bolotte presented an Incompatible Activities Statement to plaintiff on August

7 | 30, 2007.

8 | 147.    Bolotte acted beyond the scope of her authority, in willful violation of the law,

9 | and with malice.

10 | 148.    Bolotte used the prestige of the CA Judicial Council and the Administrative

11 | Office of the Courts for the personal gain of Fredric Trester and John Palmer.

12 | 149.    Pursuant to California Government Code, Sec. 19990, an Incompatible Activities

13 | Statement shall be given before the determination of proscribed activities and shall

14 | include a notice of for appeal from an incompatible activities determination.

15 | 150.    Bolotte's Incompatible Activities Statement placed plaintiff in a false light.

16 | 151.    Bolotte's Incompatible Activities Statement did not include a notice for how

17 | plaintiff could appeal from an incompatible activities determination.

18 | 152.    By not including such notice, Bolotte deprived plaintiff of his right to petition the

19 | government for redress of grievances.

29 | WHEREFORE, Plaintiff seeks relief as set forth below.

21 |

22 | **SEVENTH CAUSE OF ACTION (42 U.S.C. Sec. 1983)**

23 | Conspiracy to Deprive 1st Amendment Right to Petition Government for Redress of

34 | Grievances

25 | (Against Bayangos, Bolotte, Sommer, Spero, Taylor and DOES 1-20)

26 | **153.**    Plaintiff hereby incorporates by reference all previous paragraphs of this

27 | complaint as if fully set forth herein.

28 | **154.**    The Petition Clause of the 1st Amendment to the US Constitution guarantees the

1    right to petition the government for redress of grievances.

2    155.    Plaintiff informed AOC staff about plaintiff's intention to file complaints against

3    Superior Court and AOC employees involved in the ex parte communication.

4    156.    Plaintiff alleges on information and beliefs that defendants and co-conspirators

5    knew that such petitions could include, but might not be limited to, complaints with the

6    California State Bar, The Arizona State Bars, and the California Commission on Judicial

7    Performance.

8    157.    Plaintiff informed AOC Office of General Counsel about plaintiff's intention to

9    file Judicial Branch claim pursuant to CA Tort Claims Act.

10    158.    Defendants conspired to deprive plaintiff of his right to petition the government

11    for redress of grievances.

12    159.    Pursuant to California Government Code, Sec. 995.6, "A public entity is not

13    required to provide for the defense of an administrative proceeding brought against an

14    employee or former employee, but a public entity may provide for the defense of an

15    administrative proceeding brought against an employee or former employee..."

16    **160.**    Defendants acted beyond the scope of legal authority when conspiring to prevent

17    plaintiff from filing complaints with administrative and regulatory agencies by, inter

18    alia, unnecessarily delaying plaintiff's access to public records; denying plaintiff public

19    records without authority and against Judicial Branch policy; by citing attorney-client

29    privilege despite absence of actual attorney-client relationship; by pretending to mail

21    records to plaintiff; by preparing false, ante-dated records with intent to allow the false

22    records to be produced for fraudulent or deceitful purposes, as true, upon any trial,

23    proceeding, or inquiry, a felony under California Penal Code, Sec. 134; and by trying to

34    create false records vis-à-vis the claims plaintiff presented to the CA Judicial Branch in

25    January 2008.

26    WHEREFORE, Plaintiff seeks relief as set forth below.

27

28

| | |
|---|---|
| 1 | **EIGHT CAUSE OF ACTION (California Civil Code, Sec. 52.1 et seq)** |
| 2 | Coercive Interference with Exercise of Right Secured by CA Constitution |
| 3 | (Against Bayangos) |
| 4 | 161.    Plaintiff hereby incorporates by reference all previous paragraphs of this |
| 5 | complaint as if fully set forth herein. |
| 6 | 162.    The CA Constitution grants plaintiff the right of access to information |
| 7 | concerning the conduct of the people's business, and, states that the writings of public |
| 8 | officials and agencies shall be open to public scrutiny. |
| 9 | 163.    On September 28, 2007, around 2:10 p.m., in the AOC HR Division's office at |
| 10 | 455 Golden Gate Avenue, San Francisco, CA, Bayangos interfered by coercion with |
| 11 | plaintiff's exercise and enjoyment of a right secured by the California constitution. |
| 12 | WHEREFORE, Plaintiff seeks relief as set forth below. |
| 13 | |
| 14 | **NINTH CAUSE OF ACTION** |
| 15 | Publication with Reckless Disregard for Truth or Falsity and with Actual Malice |
| 16 | (Against Taylor and DOES 1-20) |
| 17 | 164.    Plaintiff hereby incorporates by reference all previous paragraphs of this |
| 18 | complaint as if fully set forth herein. |
| 19 | 165.    The Written Declaration (I) whose authorship was attributed to Abueg and (II) |
| 29 | which was allegedly signed by Abueg under penalty of perjury on July 20, 2007 was in |
| 21 | truth authored by someone other than Abueg at a much later date. |
| 22 | 166.    Plaintiff alleges on information and belief that the original electronic records is |
| 23 | evidence of fraud in the party offering the record. |
| 34 | 167.    The person or persons that authored the fabricated record entertained serious |
| 25 | doubts as to the truth of the publication and published it with reckless disregard for truth |
| 26 | or falsity and with actual malice. |
| 27 | 168.    Plaintiff has suffered loss of reputation, shame, mortification and hurt feelings as |
| 28 | a result. |

1    169.    Plaintiff continues to experience shame, mortification, and hurt feelings due to

2    not having had the opportunity to clear his name and restore his reputation.

3    170.    Plaintiff alleges on information and beliefs that the fabricated Abueg Written

4    Declaration (along with other fabricated, ante-dated records) was distributed to

5    employees at the AOC, including but not limited to Angela Bayangos, through Taylor.

6    WHEREFORE, Plaintiff seeks relief as set forth below.

7

8                                    **TENTH CAUSE OF ACTION**

9            Publication with Reckless Disregard for Truth or Falsity and with Actual Malice

10                                   (Against Bolotte and DOES 1-20)

11    171.    Plaintiff hereby incorporates by reference all previous paragraphs of this

12    complaint as if fully set forth herein.

13    172.    Bolotte gave an Incompatible Activities Statement to plaintiff.

14    173.    The Incompatible Activities Statement placed plaintiff in a false light by creating

15    an appearance that plaintiff had used his AOC affiliation for personal gain or influence.

16    174.    Bolotte, the authors or authors of the Incompatible Activities Statement,

17    entertained serious doubts as to the truth of the publication and published it with

18    reckless disregard for truth or falsity and with actual malice.

19    175.    Plaintiff's former employer introduced the Incompatible Activities Statement as

29    "evidence" of plaintiff's misconduct at a December 7, 2007 government hearing.

21    176.    Plaintiff suffered monetary damages and emotional distress.

22    177.    Plaintiff has suffered loss of reputation, shame, mortification and hurt feelings as

23    a result.

34    178.    Plaintiff continues to experience shame, mortification, and hurt feelings due to

25    not having had the opportunity to clear his name and restore his reputation.

26            WHEREFORE, Plaintiff seeks relief as set forth below.

27

28

1

**ELEVENTH CAUSE OF ACTION**

2

Publication with Reckless Disregard for Truth or Falsity and with Actual Malice

3

(Against Bayangos and DOES 1-20)

4   179.   Plaintiff hereby incorporates by reference all previous paragraphs of this

5   complaint as if fully set forth herein.

6   180.   Plaintiff's former employer introduced Bayangos' statements as "evidence" of

7   plaintiff's misconduct at a January 9, 2008 government hearing.

8   181.   Bayangos entertained serious doubts as to the truth of the publication and

9   published it with reckless disregard for truth or falsity and with actual malice.

10  182.   Plaintiff suffered monetary damages and emotional distress.

11  **183.**   Plaintiff has suffered loss of reputation, shame, mortification and hurt feelings as

12  a result.

13  **184.**   Plaintiff continues to experience shame, mortification, and hurt feelings due to

14  not having had the opportunity to clear his name and restore his reputation.

15  WHEREFORE, Plaintiff seeks relief as set forth below.

16

17

**TWELFTH CAUSE OF ACTION**

18

Conspiracy to commit fraud and deceit; grand theft

19

(Against Allen, Bolotte, Gelade, Kann, Palmer, Passon, Power, Taylor, Treige, Trester,

29

and DOES 1-20)

21  185.   Plaintiff hereby incorporates by reference all previous paragraphs of this

22  complaint as if fully set forth herein.

23  186.   Plaintiff filed suit against Trester because Trester's agent Palmer had defrauded

34  plaintiff.

25  187.   Had plaintiff's claim been settled in open court and according to law, plaintiff

26  would have been entitled to $3,450 in damages (not including actual filing fee).

27  188.   Defendants agreed to commit wrongful acts intended to induce plaintiff to accept

28  a much smaller monetary settlement.

1    189.   But for defendants' conspiracy, plaintiff would not have accepted a $600

2    settlement.

3    190.   Defendants' misrepresentation and concealment caused plaintiff to accept the

4    lesser settlement amount.

5    191.   Plaintiff was harmed by defendants' conspiracy to defraud plaintiff.

6    192.   All defendants who agreed to a common plan or design are liable, including

7    defendants who committed no overt act and gained no benefit therefrom.

8    193.   Plaintiff suffered monetary damages and emotional distress.

9    194.   Defendants are responsible for plaintiffs' harm because they were part of an

10   agreement by two or more persons to commit a wrongful act.

11   195.   Defendants who entered into the conspiracy after its inception are in law a party

12   to every act previously or subsequently done by any of the other co-conspirators.

13          WHEREFORE, Plaintiff seeks relief as set forth below.

14

15                              **PRAYER FOR RELIEF**

16   Plaintiff seeks judgment against Defendants as follows:

17   196.   Compensatory damages, including emotional distress damages, lost wages, and

18   interest;

19   197.   Such punitive damage that the Court may deem just and proper;

29   198.   Equitable relief in the form of a court order (reference, paragraph 104) to compel

21   the County of Solano to give plaintiff the records identified in paragraph 97 as unaltered

22   electronic files, with all the original file properties intact, on a CD or DVD.

23   199.   All additional relief to which the plaintiff is entitled.

34   200.   Such other and further relief that the Court may deem just and proper

25

26          DEMAND FOR JURY TRIAL

27

28

1  Date July 17, 2008

(Signature of party)

Patrik Nylund

(Printed Name)

2250 14th Ave., San Francisco, CA 94116

(Address)

patrik@pnylund.com

(E-mail address)

415-902-7068

(Telephone number)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

PATRIK NYLUND

**DEFENDANTS**

DIANNE BOLOTTE, MARK GELADE, KENNETH KANN, PETER ALLEN, DAVID POWER, FREDRIC TRESTER, et al

**(b)** County of Residence of First Listed Plaintiff San Francisco
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant        San Francisco
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Patrik Nylund (appearing Pro Se)
2250 14th Avenue
San Francisco, CA 94116
(415) 908-7068 (MOBILE)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | or Defendant) | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | 26 USC 7609 | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☒ 440 Other Civil Rights | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | | ☐ 6 Multidistrict Litigation | | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Sec. 1983, 1985, and 1986

Brief description of cause:
Constitutional torts, coercive interference with state constitutional right, conspiracy to commit fraud and deceit - grand theft

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND        ☐ SAN JOSE

DATE
July 17, 2008

SIGNATURE OF ATTORNEY OF RECORD

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.       (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.       Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.       Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.       Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.       Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.       Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**       Example:       U.S. Civil Statute: 47 USC 553
                                                          Brief Description: Unauthorized reception of cable service

**VII.       Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.       Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.