1

Patrik Nylund
2250 14ᵗʰ Avenue
San Francisco, CA 94116
(415) 908-7068 (MOBILE)
(360) 242-1413 (FAX, incoming only
patrik@pnylund.com

Appearing Pro Se

Plaintiff

**FILED**

**JUL 2 1 2008**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

2

3

4

5

6

7

8

9

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PATRIK NYLUND, Plaintiff,

vs.

JUSTINA ABUEG, INDIVIDUAL CAPACITY;
PETER ALLEN, INDIVIDUAL CAPACITY;
ANGEL BAYANGOS, INDIVIDUAL CAPACITY;
DIANNE BOLOTTE, INDIVIDUAL CAPACITY;
MARK GELADE, INDIVIDUAL CAPACITY;
KENNETH KANN, INDIVIDUAL CAPACITY;
MONTGOMERY PARTNERS, INC., CORPORATE
REAL ESTATE LICENSEE, GENERAL PARTNER
OF LIMITED PARTNERSHIPS, AND INDIVIDUAL
CAPACITY;
JOHN PALMER, REAL ESTATE LICENSEE,
GENERAL PARTNER OF LIMITED
PARTNERSHIPS, AND INDIVIDUAL CAPACITY;
CYNTHIA PASSON, INDIVIDUAL CAPACITY;
DAVID POWER, INDIVIDUAL CAPACITY;
BARRETT SCHAEFER, INDIVIDUAL CAPACITY;
ANDREW SOMMER, INDIVIDUAL CAPACITY;
NANCY SPERO, INDIVIDUAL CAPACITY;
BRIAN TAYLOR, INDIVIDUAL CAPACITY;
PHYLLIS TREIGE, INDIVIDUAL CAPACITY;
FREDRIC TRESTER, DESIGNATED CORPORATE
OFFICER AND INDIVIDUAL CAPACITY;
DOES 1-20, Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FIRST AMENDED COMPLAINT**

Civil Action No. CV-08-3461    SI

COMPLAINT FOR
COMPENSATORY DAMAGES,
PUNITIVE DAMAGES, AND
EQUITABLE RELIEF (COURT
ORDER)

Constitutional torts; coercive
interference with exercise of right
secured by CA constitution;
publication with reckless disregard for
truth or falsity and with actual malice;
fraud, deceit, and grand theft;
conspiracy; intentional torts.

**DEMAND FOR JURY TRIAL**



| | |
|---|---|
| 1 | **JURISDICTION** |
| 2 | 1.    Jurisdiction is proper in this court because of constitutional torts (federal |
| 3 | question) pursuant to 42 U.S.C. Sec. 1983, 1985, and 1986. |
| 4 | |
| 5 | **VENUE** |
| 6 | 2.    Venue is proper because a substantial portion of the events that gave rise to |
| 7 | this lawsuit occurred in this district. |
| 8 | |
| 9 | **INTRADISTRICT ASSIGNMENT** |
| 10 | **3.**    Venue is proper because a substantial portion of the events that gave rise to |
| 11 | this lawsuit occurred at the CA Administrative Office of the Courts on 455 Golden |
| 12 | Gate Avenue, San Francisco, CA 94102. Plaintiff alleges on information and beliefs |
| 13 | that some defendants live in San Francisco, including Dianne Bolotte, Mark Gelade, |
| 14 | and Kenneth Kann. |
| 15 | |
| 16 | **EXHAUSTION OF REMEDIES** |
| 17 | **4.**    Plaintiff has filed claims with the CA Judicial Branch pursuant to the CA Tort |
| 18 | Claims Act (CA Government Code 810 et seq); filed complaint with the CA |
| 19 | Department of Labor against former employer (CA Labor Code 96[k]); initiated and |
| 20 | participated in non-binding mediation (CA Evidence Code 1115 et seq); filed |
| 21 | complaints with CA Judicial Branch Internal Audit Services; filed complaints with |
| 22 | the CA State Bar against Vincent DeMartini, Barrett Schaefer, Andrew Sommer, |
| 23 | Fredric Trester, and James Walker; filed complaints with the CA Department of |
| 24 | Real Estate against Montgomery Partners, Inc. et al; made a request for information |
| 25 | about how to file a civil rights complaint with the CA Attorney General's Office; |
| 26 | made a request with the CA Attorney General's Office for action and relief pursuant |
| 27 | to CA Civil Code 52.1; made a request for information about how to file a civil |
| 28 | rights complaint with the US Department of Justice; and made a request for a |

1  criminal investigation with the City of San Francisco District Attorney's Office as
2  well as a request for an action and relief pursuant to CA Civil Code 52.1. A courtesy
3  copy of the initial, pre-amended complaint was served on the CA Attorney General
4  (CA Civil Code 52[d]).

## PLAINTIFF

5.    Plaintiff Patrik Nylund resides in San Francisco, California. Plaintiff worked
at the CA Administrative Office of the Courts ("AOC") as the employee of a third
party, AppleOne (dba), between October 2006 – September 2007. Plaintiff worked
with the CA Judicial Branch websites at the AOC as a Web Content Strategist. As
such, he helped internal content owners develop and manage content for public and
internal websites of the CA Judicial Branch, including but not limited to
www.courtinfo.ca.gov.

## DEFENDANTS

### Defendants affiliated with Montgomery Partners, Inc.

6.    Montgomery Partners, Inc. (dba Montgomery Partners), sued in capacity as
corporate real estate licensee, general partner of Limited Partnerships, and
individually. Plaintiff alleges on information and beliefs that Montgomery Partners
incorporated in California in 1984; is headquartered in the County of Marin (100
Shoreline Highway, Suite 160A, Mill Valley, CA 94941); has a local office in San
Francisco at 535 Stockton Street, CA 94108; that Montgomery Partners does not
have a local office in southern California; that Montgomery Partners has been a
corporate real estate licensee since 1987; that its employees include, but may not be
limited to, John Palmer (President and licensed real estate salesperson), Fredric
Trester (Vice-President and licensed real estate broker), Michael Piro (Vice-
President, licensed real estate salesperson, and licensed Notary Public), Joy Johnson
(non-licensee, manager engaged in property management, and Bushy's and Tover's

1   (non-licensee, manager engaged in property management, and Busby's and Tovar's

2   superior); Debbie Busby (non-licensee representing self as property manager); and

3   Melina Tovar, Tamara Evans, and DOES 1+ (all non-licensees); and that

4   Montgomery Partners never held a Tenant-in-Common ownership interest in 1020 N

5   Camino Alto in Vallejo, CA.

6   7.   John Palmer ("Palmer"), sued in capacity as real estate salesperson licensee,

7   general partner of Limited Partnerships, and individual capacity. Plaintiff alleges on

8   information and beliefs that Palmer is the President of Montgomery Partners and as

9   such organizationally above Fredric Trester; has been a licensed CA Real Estate

10   Salesperson since 1978; and that Palmer resides at 5 Upper Hill Road, Mill Valley,

11   CA 94941.

12   8.   Fredric Trester ("Trester"), sued in designated corporate officer and

13   individual capacity. Plaintiff alleges on information and beliefs that Trester is Vice-

14   President of Montgomery Partners and John Palmer's supervisor; that Trester has

15   been a licensed CA attorney since 1980 and a licensed CA Real Estate Broker since

16   1984; that Trester is employed by Montgomery Partners as its Vice-President; that

17   Trester has been an employee of Montgomery Partners since, or around, 1988; that

18   Trester is the Montgomery Partners designated corporate officer; that Trester

19   graduated from Santa Clara School of Law in 1980; that Trester is a member of the

20   Santa Clara School of Law alumni network; that Trester is, and has been for years, a

21   volunteer Judge pro tem for the Superior Court of CA; that Trester resides at 828

22   South Tremaine Avenue, Los Angeles, CA 90005; and that Trester works full time

23   as an attorney in Southern California.

24

25                              **Defendant Schaefer**

26   9.   Barrett Schaefer ("Schaefer"), sued in individual capacity. Plaintiff alleges on

27   information and beliefs that Schaefer is an attorney and non-partner member of the

28   law firm DeMartini & Walker LLP ("DeMartini & Walker"); that DeMartini &

1    Walker is a three-attorney law firm, including Mr. Schaefer; that Schaefer has been

2    an employee of DeMartini & Walker since 2006-07; that Schaefer graduated from

3    Santa Clara School of Law in 2000; that Schaefer is a member of the Santa Clara

4    School of Law alumni network; that Schaefer's specializes in Business Law, not

5    Real Estate Law; and that Schaefer's superiors are Vincent DeMartini ("DeMartini")

6    and James Walker ("Walker"), both partners of DeMartini & Walker LLP.

7

8              **Defendants affiliated with the Superior Court of CA, County of Solano**

9    10.    Plaintiff alleges on information and beliefs that all the following defendants,

10   all sued in their individual capacity, were employees of the Superior Court of

11   California, County of Solano ("Superior Court") on July 19, 2007; have remained

12   employees of the Superior Court between then and the date of the filing of this

13   complaint (with the possible exception of an unknown number of DOES); and all

14   worked at 530 Union Avenue, Fairfield, CA 94533 (except for Justina Abueg and

15   the possible exception of an unknown number of DOES).

16   11.    David Power ("Power"), an individual, and Brian Taylor's superior during

17   Power's tenure as Presiding Judge (CA Rule of Court 10.603). Plaintiff alleges on

18   information and beliefs that Power has been a judge in Solano County since 1992-

19   93; that Power and Dennis Bunting (current Solano County Counsel) were judges in

20   Solano County at the same time and up until, at least, 1995; that Power and Bunting

21   know each other; that Power graduated from Santa Clara School of Law in 1975;

22   that Power is a members of the Santa Clara School of Law alumni network; and that

23   Power remained the Presiding Judge up until, or around, January 2008.

24   12.    Brian Taylor ("Taylor"), an individual, and Cynthia Passon's superior.

25   Plaintiff alleges on information and beliefs that Taylor on July 19 served as Acting

26   Court Executive Officer; that Taylor assumed the role of Acting Court Executive

27   Officer in or around the spring of 2007 when Linda Ashcraft left the position; that

28   Taylor is a trained attorney that has been a member of the CA State Bar since 1996;

1    that Taylor was an employee in the AOC HR Division (Labor and Employee
2    Relations Unit) in San Francisco before becoming an employee in the Superior
3    Court Executive Office in, or around, 2005; that Taylor was promoted to Court
4    Executive Officer during tenure of Presiding Judge Power in, or around, December
5    2007; that some of those employed in the AOC HR Division in San Francisco at the
6    same time as Taylor were still employed by the AOC HR Division in July-
7    September 2007; that Taylor's AOC employment overlapped with the AOC
8    employment of Kenneth Kann and Dianne Bolotte; that Taylor knows Kann,
9    Bolotte, and Bayangos; and that Taylor knows other AOC employees, including but
10   not limited to Ernesto Fuentes, the AOC HR Division Director.

11   13.    Cynthia Passon ("Passon"), an individual, who serves as a Senior
12   Management Analyst for the Court Executive Office. Plaintiff alleges on
13   information and beliefs that Passon was an HR Analyst in the AOC HR Division in
14   San Francisco for many years before becoming an employee of the Superior Court
15   in, or around, 2006; that Passon knew Taylor when they both worked in the AOC
16   HR Division in San Francisco; that some of those employed in the AOC HR
17   Division in San Francisco at the same time as Passon were still employed by the
18   AOC HR Division in July-September 2007; that Passon was also an employee in the
19   AOC EOP Division for years; that Passon's AOC employment started in, or before,
20   1999; that Passon's AOC employment overlapped with the AOC employment of
21   Kenneth Kann and Dianne Bolotte; that Passon knows Kann, Bolotte, and Bayangos;
22   and that Passon knows other AOC employees, including but not limited to Ernesto
23   Fuentes, the AOC HR Division Director.

24   14.    Justina Abueg ("Abueg"), an individual, who works as a Process Clerk in the
25   Superior Court Civil/Small Claims Division at 321 Tuolumne Street, Vallejo, CA
26   94590.

27
28

1     **Defendants affiliated with the CA Administrative Office of the Courts**

2     15.    Plaintiff alleges on information and beliefs that all the following defendants,

3     sued in their individual capacity, were employees of the CA Administrative Office

4     of the Courts ("AOC") on July 19, 2007; have remained employees of the AOC

5     between then and the date of the filing of this complaint (except for Andrew

6     Sommer, and the possible exception of an unknown number of DOES); and all work

7     or worked at 455 Golden Gate Avenue, San Francisco, CA 94102 (with the possible

8     exception of an unknown number of DOES).

9     16.    Kenneth Kann ("Kann"), an individual, and Dianne Bolotte's and Nancy

10    Spero's superior. Plaintiff alleges on information and beliefs that Kann is a trained

11    attorney that has been a member of the CA State Bar since 1986; that Kann became

12    Division Manager for the Executive Office Programs ("EOP") Division in or around

13    2005; that Kann prior to this served as supervising attorney in the AOC Office of

14    General Counsel ("OGC") for many years; that the OGC has two major functions:

15    (1) house counsel and (2) development of CA Rules of Court and statewide legal

16    forms; and that Kann as OGC Project Manager was directly involved and

17    responsible for the development of statewide legal forms.

18    17.    Dianne Bolotte ("Bolotte"), an individual, and Peter Allen's and Nancy

19    Spero's superior. Plaintiff alleges on information and beliefs that Bolotte serves as

20    Assistant Director in the EOP Division; and that Bolotte has been an AOC employee

21    since at least 2003.

22    18.    Nancy Spero ("Spero"), an individual. Plaintiff alleges on information and

23    beliefs that Spero is a trained attorney that has been a member with the CA State Bar

24    since 1974; that Spero is a senior attorney that works in the AOC EOP Division; and

25    that Spero has been an AOC employee since, or before, 2002.

26    19.    Peter Allen ("Allen"), an individual, and Mark Gelade's superior. Plaintiff

27    alleges on information and beliefs that Allen's AOC employment began in February

28    2007; that Allen serves as the Office of Communications Manager; that the Office of

1  Communications is part of the EOP Division; and that Allen is a trained attorney
2  licensed to practice law in Arizona.

3  20.  Mark Gelade ("Gelade"), an individual, and Phyllis Treige's superior.
4  Plaintiff alleges on information and beliefs that Gelade is and was a Manager in the
5  Office of Communications; that the Office of Communications is part of the EOP
6  Division; and that Gelade worked in the Web Communications Group.

7  21.  Phyllis Treige ("Treige"), an individual. Plaintiff alleges on information and
8  beliefs that Treige is and was a member of the Web Communications Group; and
9  that the Web Communications Group is part of the Office of Communications.

10  22.  Angel Bayangos ("Bayangos"), an individual, and HR Analyst in the AOC
11  Human Resources (HR) Division.

12  23.  Andrew Sommer ("Sommer"), an individual, and attorney in the AOC Office
13  of General Counsel. Plaintiff alleges on information and beliefs that Sommer's legal
14  expertise is employment law; that Sommer joined the AOC OGC in, or around, the
15  spring of 2007; and that Sommer's AOC employment ended in, or around, May
16  2008.

17  **Defendants DOES 1 - 20**

18  24.  Plaintiff alleges on information and beliefs that the wrongs and harms
19  outlined in this complaint involves wrongs by DOES 1-20, persons under the law,
20  that have acted under color of law, in willful violation of state and federal laws, and
21  with malice, and have committed intentional and negligent torts. Because employees
22  of the Superior Court and the AOC have engaged in a conspiracy to conceal the
23  wrongs of those that wronged plaintiff and violated plaintiff's constitutional and
24  legal rights, plaintiff alleges on information and beliefs that the true identities of
25  involvement of DOES 1 - 20 may be ascertained through discovery and that the true
26  identify of each DOE may be the same as that of a defendant named elsewhere in
27  this complaint, or a defendant yet to be named. Thus, plaintiff reserves the right to
28  add the names of these defendants to the complaint when so prudent and possible.

1

**STATEMENTS OF FACT**

2    25.    Defendants willfully deceived plaintiff with intent to induce him to alter his

3    position to his injury or risk. Defendants are liable for any damage which plaintiff

4    thereby suffered (CA Civil Code 1709 et seq).

5    26.    Defendants entered into agreements by two or more persons to commit

6    wrongful acts. A conspiracy may be inferred from the circumstances, including the

7    nature of the acts done, the relationships between the parties, and the interests of the

8    co-conspirators

9    27.    Defendants conspired against plaintiff, a disadvantaged, self-represented,

10    non-attorney litigant. All defendants who agreed to a common plan or design are

11    liable, including defendants who committed no overt act and gained no benefit

12    therefrom. Defendants who entered into a conspiracy after its inception are in law a

13    party to every act previously or subsequently done by any of the other co-

14    conspirators.

15    28.    Defendants conspired to commit intentional torts, theft, fraud and deceit, and

16    to deprive plaintiff of his rights under the Constitution and laws of the United States

17    and the Constitution and laws of the State of California. Plaintiff was harmed by co-

18    conspirators' constitutional torts.

19    29.    Defendants willfully denied plaintiff the Equal Protection of the 14th

20    Amendment to the U.S. Constitution. Defendants were motivated by a class-based

21    invidiously, discriminatory animus against plaintiff.

22    30.    Defendants acted under color of law, outside the scope of their authority, with

23    malice, oppression, and in willful violation of law. Defendants engaged in activities

24    that were inconsistent, incompatible and in conflict with their duties as state

25    employees. Defendants used the prestige of their agencies for the private gain of

26    others, including but not limited to a Judge pro tem in the Superior Court of CA.

27    31.    Plaintiff alleges on information and beliefs the existence of electronic records

28    (information) as evidence of conspiracy, collusion, and fraud. Such evidence may

1     also include, but may not be limited to, phone records.

2     32.     Plaintiff has been harmed by the outrageous conduct, intentional and

3     negligent wrongs, and criminal acts of defendants, their oppression, fraud, deceit,

4     and malice. The torts, criminal conduct, and wrongs of defendants were the

5     proximate causes of plaintiff's injuries. Plaintiff has suffered damages, including but

6     not limited to monetary damages. Plaintiff has been devastated, both emotionally

7     and financially, as a result of defendants' wrongs. Plaintiff has suffered loss of

8     reputation, shame, mortification and hurt feelings as a result of defendants' wrongs.

9     Plaintiff continues to experience shame, mortification, and hurt feelings due to not

10     having had the opportunity to clear his name and restore his reputation. Defendants

11     are responsible for plaintiff's harm.

12

13     **November 2006 – July 2007**

14     33.     On November 29, 2006, plaintiff mailed a letter to Montgomery Partners,

15     Attn.: Joy Johnson ("Johnson"). Plaintiff demanded that his tenant security deposit

16     be returned to him, as it had been kept in violation of state law by the property

17     management company after plaintiff moved from 1020 N Camino Alto, Vallejo, CA,

18     on October 31.

19     34.     Plaintiff received a letter dated December 5 from Barrett Schaefer, an

20     attorney of DeMartini & Walker. Mr. Schaefer wrote that plaintiff's "former

21     landlord now has incurred attorneys fees as a result of your letter. Should you

22     proceed with this claim, we will counter you and be forced to proceed with seeking

23     recovery of attorneys fees from you."

24     35.     On March 14, plaintiff had a subpoena issued for Schaefer to "produce copy

25     of the bill, invoice that (a) shows the attorneys fees that plaintiff's former landlord

26     allegedly incurred and (b) details the identity of plaintiff's former landlord."

27     36.     In a letter dated March 28, 2007, Schaefer misrepresented to the Superior

28     Court what plaintiff had asked Schaefer to produce. Plaintiff alleges on information

1    and beliefs that Schaefer's misrepresentation to the Court was an a bad faith attempt

2    to obscure that Schaefer had misrepresented to plaintiff that "former landlord had

3    incurred attorneys fees as a result of plaintiff's letter" and that Schaefer had

4    attempted deceit within the meaning of CA Civil Code 1709 et seq.

5    37.    CA CC 1709-1710,"One who willfully deceives another with intent to induce

6    him to alter his position to his injury or risk, is liable for any damage which he

7    thereby suffers... A deceit, within the meaning of the last section, is either...The

8    suggestion, as a fact, of that which is not true, by one who does not believe it to be

9    true."

10    38.    According to records in the Solano County Assessor-Recorder's Office, when

11    plaintiff moved to 1020 N Camino Alto in April 2006, the apartment building was a

12    Tenancy-in-Common ("TIC"), whose TICs included Walker (an attorney and

13    Schaefer's superior), Palmer (President of Montgomery Partners, the property

14    management company), and Novato Hill Investors, LP ("Novato Hill Investors"), a

15    California limited partnership with multiple share holders.

16    39.    On September 7, 2006, Palmer recorded a Grant Deed with Solano County

17    (dated August 10). According to this Grant Deed, Novato Hill Investors granted its

18    entire 73.778 percent TIC interest to Bay Vista Investors, LP ("Bay Vista

19    Investors"). The Grant Deed had been notarized by Michael Piro ("Piro"), who was

20    also a licensed Real Estate Salesperson and Montgomery Partners Vice-President.

21    40.    According to records in the Solano County Assessor-Recorder's Office, when

22    plaintiff sent the November 29 letter to Johnson at Montgomery Partners, 1020 N

23    Camino Alto was still owned by a TIC. The TIC members included Walker, Palmer,

24    and Bay Vista Investors.

25    41.    According to records in the Solano County Assessor-Recorder's Office,

26    Novato Hill Investors held a zero (0) TIC interest in 1020 N Camino Alto after

27    August 10, 2006. Plaintiff alleges on information and beliefs that between October

28    2006 and April 2007, DeMartini filed eight (8) Unlawful Detainers in the Superior

1    Court of CA, County of Solano (at 321 Tuolumne in Vallejo, CA). In each and every
2    complaint, DeMartini named Novato Hill Investors the owner. Palmer testified
3    several times under penalty of perjury that Novato Hill Investors was the owner,
4    which was contrary to the content of the written instruments Palmer had recorded
5    with Solano County in September.

6    42.    Plaintiff alleges on information and beliefs that Palmer recorded false
7    ownership instruments with the Record-Assessor's Office, a felony under CA Penal
8    Code 115(a). "Every person who knowingly procures or offers any false or forged
9    instrument to be filed, registered, or recorded in any public office within this state,
10   which instrument, if genuine, might be filed, registered, or recorded under any law
11   of this state or of the United States, is guilty of a felony."

12   43.    Plaintiff researched building ownership diligently before filing a complaint
13   against Montgomery Partners in the Superior Court of CA, County of San Francisco,
14   May 2007. Montgomery Partners challenged the venue, arguing that the claim
15   should be heard in Solano County. A venue hearing was scheduled for July 11.
16   Montgomery Partners venue challenge was granted by a Judge pro tem, whom
17   plaintiff later learned represented herself to the public as specializing in "landlord
18   advocacy."

19   44.    Plaintiff alleges on information and beliefs that Montgomery Partners held a
20   zero (0) TIC interest in plaintiff's former apartment building during plaintiff's tenure
21   as well as at the time plaintiff moved out. Montgomery Partners' role was that of a
22   property management company, which Palmer confirmed in written correspondence
23   with the Superior Court on both May 21 and July 3, 2006.

24   45.    Property management requires a real estate license pursuant to CA B&PC
25   10131(b), "A real estate broker...is a person who, for a compensation or in
26   expectation of a compensation, regardless of the form or time of payment, does or
27   negotiates to do one or more of the following acts for another or others...Leases or
28   rents or offers to lease or rent, or places for rent, or solicits listings of places for rent,

FIRST AMENDED COMPLAINT                                                              - 12 -
CV-08-3461 Nylund v. Abueg et al

1    or solicits for prospective tenants, or negotiates the sale, purchase or exchanges of

2    leases on real property, or on a business opportunity, or collects rents from real

3    property, or improvements thereon, or from business opportunities."

4    46.    Montgomery Partners was only licensed to act as a corporate real estate

5    broker, and subsequently able to act as a professional property management

6    company, through its designated officer, Fredric Trester.

7    47.    B&PC 10159.2(a), "The officer designated by a corporate broker licensee

8    pursuant to Section 10211 shall be responsible for the supervision and control of the

9    activities conducted on behalf of the corporation by its officers and employees as

10   necessary to secure full compliance with the provisions of this division, including

11   the supervision of salespersons licensed to the corporation in the performance of acts

12   for which a real estate license is required."

13   48.    For a corporate real estate broker to operate lawfully, it must "conduct [ ] its

14   brokerage business if at all under the active aegis of its designated broker." *Milner v.*

15   *Fox,* 102 Cal.App.3d 567, 575, 162 Cal.Rptr. 584 (1980).

16   49.    The designated officer/broker, not the corporate entity itself, is charged with

17   the responsibility to assure corporate compliance with the real estate law. *Norman v.*

18   *Dep't. of Real Estate,* 93 Cal.App.3d 768, 776-77, 155 Cal.Rptr. 715 (1979).

19   50.    Federal case law confirms the legislative intent of CA B&PC 10159.2. "The

20   conclusion that the designated officer/broker is personally responsible for

21   supervising the salesperson's compliance with the law is supported by the legislative

22   history of the Business and Professions Code § 10159.2. The staff analysis for the

23   Senate Committee on Business and Professions, which related the background and

24   purpose of the proposed enactment of that section in 1979 stated: *BACKGROUND:*

25   The Business and Professions Code stipulates that a person or persons applying for a

26   corporate license to practice real estate must designate in the application an officer

27   of the proposed corporation who holds a valid real estate broker's license. That

28   person becomes the "designated officer" of the corporation. The purpose of this

provision is to provide the public, in its dealings with real estate corporations, the same licensing protections afforded it in dealing with non-corporate real estate concerns. As currently worded, however, there is no stipulation in the law as to the designated officer's control or supervisory responsibilities over the corporation.... *PROPOSED LEGISLATION:* AB 985 stipulates that the designated officer named on the corporate license application assumes responsibility for the officer's, employee's and salesperson's compliance with the provisions of the Real Estate Law....*COMMENTS:* AB 985 attempts to insure licensed supervision of real estate corporation activity by holding designated officers personally responsible for that supervision." *Holley v. Meyer* (March 7, 2005).

51.    California Civil Jury Instructions ("CACI") No. 3703, "It is settled that for purposes of liability to third parties for torts, a real estate salesperson is the agent of the broker who employs him or her. The broker is liable as a matter of law for all damages caused to third persons by the tortious acts of the salesperson committed within the course and scope of employment." (*California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575, 1581 [23 Cal.Rptr.2d 462], internal citations omitted.)"

52.    Plaintiff prepared the filing of a civil action against Trester in the Superior Court of CA, County of Solano. Plaintiff stated in the complaint that "Montgomery Partners, Inc. kept my security deposit in bad faith when I vacated my apartment, in violation of state law. Inter alia, it deducted $918.40 for a non-incurred, bogus charge. As its designated officer, defendant (Fredric Trester) is personally liable under CA law...$918.40 deducted from tenant security deposit for carpet replacement that didn't take place...The property management company, Montgomery Partners, Inc., kept my $1,150 security deposit in bad faith, in violation of state law."

| | |
|---|---|
| 1 | **July 19, 2007 (Thursday)** |
| 2 | 53.    On July 19, 2007, plaintiff went to the Superior Court of California, County |
| 3 | of Solano ("Superior Court") to file a small claims action outside of his assigned |
| 4 | work hours. |
| 5 | 54.    Process Clerk Abueg refused to let plaintiff file the lawsuit because plaintiff's |
| 6 | Judicial Council form (SC-100) lacked material added by the local court. Plaintiff let |
| 7 | the defendant know that under state law, no other form than the Judicial Council |
| 8 | form plaintiff had brought in with him was necessary to file the lawsuit. Yet, Abueg |
| 9 | continued to deny plaintiff his right to file the lawsuit. |
| 10 | 55.    Plaintiff was convinced that Montgomery Partners' venue challenge had not |
| 11 | been about the venue, but about tricking plaintiff into checking the "where the |
| 12 | contract was made" box on the claim form so that the property management |
| 13 | company could argue the dispute was a contract action and then file a motion to |
| 14 | have the dispute moved to private, binding arbitration. |
| 15 | 56.    Plaintiff had reasons to believe that the local material Abueg demanded |
| 16 | plaintiff added to his filing could be misused by defendant Trester to deprive |
| 17 | plaintiff of rights spelled out in CA Civil Code 1953. |
| 18 | 57.     CA CC 1953 reads in part, "Any provision of a lease or rental agreement of a |
| 19 | dwelling by which the lessee agrees to modify or waive any of the following rights |
| 20 | shall be void as contrary to public policy…His procedural rights in litigation in any |
| 21 | action involving his rights and obligations as a tenant." |
| 22 | 58.    Plaintiff refused to include material added by the local court, because plaintiff |
| 23 | believed local material could be used by defendant, Trester, to force dispute out of |
| 24 | the court and into binding, private arbitration. |
| 25 | 59.    Plaintiff believed that if the dispute ended up in binding, private arbitration, |
| 26 | the outcome of the dispute would not be determined by state law, which was on |
| 27 | plaintiff's side, but by language of the lease agreement, which was contrary to public |
| 28 | policy. A real estate attorney that reviewed plaintiff's lease agreement said it was the |

1   most biased, pro-landlord lease agreement he had ever encountered.

2   60.    Plaintiff had no choice other than to leave the courthouse without having had
3   his lawsuit filed. Plaintiff drove to a local store with Internet access and then
4   returned to the courthouse with copies of state law and CA Rules of Court that
5   proved Abueg had no legal authority upon which to deny plaintiff his legal right to
6   file a lawsuit.

7   61.    Abueg refused to look at the printouts, yet kept denying plaintiff his legal
8   right to file the lawsuit. In an attempt to get Abueg to look at the printouts, including
9   California Rule of Court 1.42 available at www.courtinfo.ca.gov, plaintiff tried to
10  communicate that he was familiar with Judicial Branch websites as a result of
11  working with them every day at the AOC.

12  62.    California Rule of Court 1.42 states that "A court must not reject for filing a
13  Judicial Council form for any of the following reasons...The form lacks any other
14  material added by a court."

15  63.    Abueg immediately agreed to let plaintiff file the lawsuit, but without
16  reviewing the above CA Rule of Court and the other applicable state laws.

17  64.    Plaintiff alleges on information and beliefs that Superior Court policy is that
18  "Since court staff may not know the answers to all questions about court rules,
19  procedures, and practices...(court staff) have been instructed not to answer questions
20  if (they) do not know the correct answers. For additional information, (litigants
21  should) contact a lawyer or (their) local law library, or check the California Courts
22  Self-Help Center Web site at www.courtinfo.ca.gov."

23  65.    Plaintiff alleges on information and beliefs that Abueg knew that her
24  numerous refusals to let plaintiff file his lawsuit were unlawful under state law.

25

26  **July 23, 2007 (Monday)**

27  66.    On July 23, plaintiff mailed a motion to the Presiding Judge, David Power. In
28  this motion, plaintiff respectfully requested his case not be assigned to a temporary

1    judge, exercising a right spelled out in the CA Constitution (Article VI, Sec. 21).

2    Plaintiff did not want his case assigned to a temporary judge because of past

3    experience with temporary judge that had failed to recuse herself during

4    circumstances when a recusal would have been proper. Copies of the motion were

5    mailed to the Clerks' Office and the defendant, Trester, whom had been named the

6    defendant in his capacity as a Real Estate Broker.

7    67.    Plaintiff alleges on information and beliefs that Trester was at the time, and

8    had been in the recent past, a volunteer temporary judge for the Superior Court of

9    California. Plaintiff alleges on information and beliefs that sometime immediately

10   after receiving a copy of the plaintiff's motion on, or before, July 26, but before

11   service on July 31, Trester initiated ex parte contact with Power; that Trester used

12   his affiliation with the Superior Court for personal gain and influence by asking for

13   Power's help with having plaintiff's lawsuit forced into binding arbitration, or

14   thrown out on a fabricated technicality, or dismissed with prejudice by the court; and

15   that Trester knew he and John Palmer risked losing their licenses if he lost plaintiff's

16   small claim action, as plaintiff had alleged fraud, misrepresentation, and deceit in the

17   complaint.

18   68.    Pursuant to B&PC 10177.5," When a final judgment is obtained in a civil

19   action against any real estate licensee upon grounds of fraud, misrepresentation, or

20   deceit with reference to any transaction for which a license is required under this

21   division, the commissioner may, after hearing in accordance with the provisions of

22   this part relating to hearings, suspend or revoke the license of such real estate

23   licensee."

24   69.    Plaintiff alleges on information and beliefs that Power immediately agreed to

25   help Trester defeat plaintiff's lawsuit by any means possible and that Power, Trester,

26   and Palmer acted in collusion towards this goal. Plaintiff alleges on information and

27   beliefs that Power conspired with Trester and Palmer to manipulate the process,

28   obstruct justice, and violate plaintiff's Equal Protection rights in order to reach an

1    outcome favorable to Trester and Palmer.

2

3                           **August 3, 2007 (Friday)**

4    70.    On or around August 3, plaintiff received a copy of a letter from Trester.

5    Trester had allegedly mailed the original letter to Presiding Judge Power on August

6    1. Among other things, Trester threatened to file sanctions against plaintiff pursuant

7    to CA Code of Civil Procedure 128.7. Trester also challenged the venue.

8

9                           **August 6, 2007 (Monday)**

10    71.    On August 6, plaintiff filed a motion with the Clerks Office to have Trester's

11    venue challenge quashed (Montgomery Partners had already acknowledged its role

12    as the property management company and that Solano was the proper venue).

13    Because Power had not yet made a ruling on plaintiff's motion not to have the case

14    assigned to a temporary judge, plaintiff also included another copy of the July 23

15    motion, which had been filed according to CA Code of Civil Procedure 116.130[h].

16    The Process Clerk said she would forward the motions to the Presiding Judge. While

17    at the Clerks Office, plaintiff reviewed his case file. The case file did not include any

18    copies of letters from Trester to the Presiding Judge. Not did the case file include a

19    note to the temporary judge about plaintiff's "refusal" to file a local form on July 19.

20

21                           **August 10, 2007 (Friday)**

22    72.    On August 10, Mark Gelade, plaintiff's supervisor at the AOC, said Dianne

23    Bolotte wanted to meet with plaintiff about some "problems" with plaintiff's

24    pending small claims action. Plaintiff had never had any contact with Bolotte prior

25    to this. Bolotte said to plaintiff that Process Clerks had complained about his July 19

26    filing. Plaintiff informed Bolotte and Gelade that Process Clerks had unlawfully

27    denied plaintiff his legal right to file a lawsuit. Plaintiff then spent roughly an hour

28    answering Bolotte's questions about his small claims action. Among other things,

1   Bolotte wanted to know about plaintiff's motion not to have the case assigned to a

2   temporary judge. Bolotte's questions led plaintiff into a detailed explanation about

3   why plaintiff did not want case to go into binding arbitration. Plaintiff clarified to

4   Bolotte that the arbitration clause in the lease agreement was against public policy

5   and non-enforceable. Plaintiff told Bolotte that Trester was an attorney, but had been

6   named the defendant in his capacity as a Real Estate Broker, yet used the letterhead

7   of his law firm in his communications with plaintiff and the Court. Plaintiff

8   communicated to Bolotte plaintiff's belief that defendant had engaged in bad faith

9   tactics. Bolotte immediately replied, "That's his job!" Towards the end of the

10  meeting, Bolotte said to plaintiff that he should consider dropping the small claims

11  action.

12  73.    Plaintiff alleges on information and beliefs that Bolotte attempted to

13  intimidate plaintiff into asking the Court to dismiss the action and that part of

14  Bolotte's purpose with the August 10 meeting was to compile as much information

15  as possible about plaintiff's legal strategy on behalf of the defendant, Trester.

16  74.    Plaintiff alleges on information and beliefs that Bolotte and Gelade lied to

17  plaintiff about Superior Court Clerks having complained to the AOC HR Division

18  about plaintiff's July 19 filing and that they lied about the Process Clerks to prevent

19  plaintiff from discovering that the actual ex parte contacts were between Trester,

20  Power, Superior Court employees on Power's behalf, and employees at the AOC;

21  and that the ex parte contacts had nothing to do with plaintiff's July 19 filing, but

22  with defendants conspiring to help Trester defeat plaintiff's lawsuit.

23  75.    Immediately after the meeting, Gelade emailed plaintiff a copy of the CA

24  State Bar publication "California Attorney: Guidelines of Civility and

25  Professionalism." Plaintiff alleges on information and beliefs that Gelade emailed

26  plaintiff this information to create a false record of Gelade and other defendants

27  giving plaintiff the tools to complain about a dishonest attorney, such as Trester.

28  76.    Plaintiff alleges on information and beliefs that the Guidelines are not

1    mandatory rules of professional conduct, nor rules of practice, nor standards of care,
2    and that the guidelines cannot be used as an independent basis for disciplinary
3    charges by the State Bar or claims of professional negligence.

4    77.    Plaintiff alleges on information and beliefs that defendants arranged to have
5    Gelade email the guidelines to plaintiff because defendants knew the guidelines
6    were harmless vis-à-vis Trester's misconduct; and that if defendants had truly
7    wanted plaintiff to have the tools needed to file an effective complaint against
8    Trester, Gelade would have emailed plaintiff CA Rules of Professional Conduct and
9    the CA State Bar Act (CA Business and Professions Code 6000 et seq).

10

11                          **August 14, 2007 (Tuesday)**

12    78.    Bolotte's interviewing plaintiff for about an hour about his pending lawsuit,
13    along with her "suggestion" that plaintiff should consider dropping the lawsuit,
14    made plaintiff feel very uncomfortable, anxious, and depressed. Plaintiff
15    communicated to Gelade in the morning of August 14 that plaintiff would drop the
16    lawsuit.

17                          **August 16, 2007 (Thursday)**

18    79.    A few days later, plaintiff received a letter from the Chamber of Presiding
19    Judge Power. The letter was dated August 13, but postmarked August 14. According
20    to the letter, someone had engaged in ex parte communication and therefore, letters
21    from plaintiff, Trester, and Palmer were being returned to them.

22    80.    Plaintiff alleges on information and beliefs that Power and Trester had
23    involved Palmer to help create a false record; that Power and Trester manipulated
24    the process to make it appear that Power had everyone's letters mailed back to them
25    because Trester's agent had attempted ex parte communication with the Presiding
26    Judge; and that Power and Trester deliberately set out to create a false record vis-à-
27    vis how serious Presiding Judge Power was about ex parte communication not being
28    acceptable; while at the same time making it appear that the ex parte communication

1 | had not been between Power and Trester, but an attempt of ex parte communication
2 | by Palmer, who wasn't an actual party, but Trester's agent.

3 | 81.   In a letter dated August 16, Palmer offered to settle the dispute on behalf of
4 | Trester. Because plaintiff had already decided to have the case dismissed before the
5 | hearing date (scheduled for September 7), plaintiff agreed to a settlement amount a
6 | fraction of what he would otherwise have accepted.

7 |

8 | **On or around August 20, 2007 (Monday)**

9 | 82.   On or around August 20, Treige said to plaintiff that she and some vendor
10 | employees would visit the Superior Court of CA, County of San Francisco that day
11 | so that the vendor employees could talk with court staff about web-related items.

12 | 83.   The Superior Court of CA, County of San Francisco is located at 400
13 | McAllister Street, San Francisco, CA 94102, in the building right next to that in
14 | which the AOC is located.

15 | 84.   Plaintiff alleges on information and beliefs that Treige's actual purpose for
16 | visiting the courthouse was to gather information from plaintiff's lawsuit against
17 | Montgomery Partners on behalf of Trester.

18 |

19 | **August 23, 2007 (Thursday)**

20 | 85.   On August 23, plaintiff overheard Peter Allen talk about a phone meeting
21 | with a judge that same afternoon. Later that day, plaintiff participated in a last
22 | minute meeting on a different floor. While heading for this meeting, plaintiff
23 | observed Bolotte enter the conference room on the floor that she, plaintiff, and Allen
24 | all worked.

25 | 86.   Plaintiff's meeting started around 3:30 p.m. Participants included Gelade,
26 | Treige, and two other AOC employees. Around, or shortly after 4:00 p.m. Gelade
27 | left the conference room for an estimated 30 – 45 minute cell phone conversation
28 | right outside the glassed conference room where plaintiff, Treige, and the other two

1    participants continued their meeting.

2    87.    Plaintiff alleges on information and beliefs that ex parte communication

3    between AOC and Superior Court staff included a phone meeting in the afternoon of

4    August 23; and that participants included, but may not have been limited to, Allen,

5    Bolotte, and Gelade from the AOC, and Power, Taylor, Passon from the Superior

6    Court, and DOES 1-20.

7    88.    Plaintiff alleges on information and beliefs that plaintiff was whisked away

8    by Treige and Gelade to the last minute meeting on a different floor to reduce the

9    risk of plaintiff finding out about the Superior Court – AOC phone conference

10   downstairs.

11   89.    The outcome of the meeting in which plaintiff and Treige participated on

12   August 23 was that Treige decided that the Web Communications Group ("WCG")

13   should stick to the exact same plan that the WCG had agreed upon in the days before

14   the August 23 meeting.

15

16                         **August 30, 2007 (Thursday)**

17   90.    On August 30, around 10:30 a.m., plaintiff received a call from Bayangos in

18   the AOC HR Division. Bayangos asked plaintiff to attend a meeting at 1:30 p.m.

19   Around 11:00 a.m., Gelade asked plaintiff to come to Gelade's office to talk about

20   the upcoming meeting. Gelade told plaintiff the upcoming meeting was about the

21   complaint over plaintiff's July 19 filing. Gelade referred to the matter as a "tempest

22   in a tea cup," and explained that it meant that somebody was making a big deal over

23   nothing. Gelade went on to describe the upcoming meeting as a "public hazing" and

24   advised plaintiff to just go in and "take the lashes." Gelade warned plaintiff against

25   arguing the facts, communicating that arguing the facts would make things worse for

26   plaintiff. Plaintiff communicated to Gelade plaintiff's belief that the meeting was

27   "more about the Presiding Judge than it was about (plaintiff)." Gelade immediately

28   got tense, uncomfortable, and silent, but did not deny this.

1      91.    Bolotte, Gelade, Bayangos, and a representative from AppleOne were present

2      at the 1:30 p.m. meeting. Bolotte gave plaintiff an Incompatible Activities

3      Statement. The footer of the statement revealed that the Incompatible Activities

4      Statement had been authored on August 24.

5      92.    CA Government Code 19990 reads in part, "Each appointing power shall

6      determine, subject to approval of the department, those activities which, for

7      employees under its jurisdiction, are inconsistent, incompatible or in conflict with

8      their duties as state officers or employees…The department shall adopt rules

9      governing the application of this section. The rules shall include provision for notice

10     to employees prior to the determination of proscribed activities and for appeal by

11     employees from such a determination and from its application to an employee."

12     93.    Bolotte knew she acted beyond the scope of her authority when giving an

13     Incompatible Activities Statement to plaintiff, who wasn't a state employee. Bolotte

14     knew that under state law, an Incompatible Activities Statement shall be given

15     before the determination of proscribed activities and shall include a notice of for

16     appeal from an incompatible activities determination. Bolotte knew she denied

17     plaintiff his right to petition the government for redress of grievances by not

18     including in the Incompatible Activities Statement information about how plaintiff

19     could appeal an incompatible activities determination. Bolotte knew that plaintiff

20     had not used his AOC affiliation for personal gain or influence on July 19 and she

21     knew that the defamatory statements in the Incompatible Activities Statement placed

22     plaintiff in a false light, which is why Gelade had been recruited to intimidate

23     plaintiff before the meeting.

24     94.    Plaintiff alleges on information and beliefs that the Incompatible Activities

25     Statement given to plaintiff on August 30 had been a matter included in the Superior

26     Court – AOC phone conference on August 23; and that the statement's purpose was

27     to discredit plaintiff and remove attention away from the ex parte communication

28     that had taken place between Bolotte, Power, Trester, and the other defendants.

**August 31, 2007 (Friday)**

95.    On August 31, plaintiff received a phone call right around 4 p.m. The call was from Palmer. Plaintiff took the phone call in a semi-secluded area of a public hallway. Palmer was eager to have plaintiff sign the Settlement Agreement before the September 7 hearing date. Plaintiff had so far refused to sign the agreement because plaintiff's instincts told him the agreement had been designed in bad faith, though at the time plaintiff had not yet discovered for what purpose. Palmer and plaintiff decided to meet the following Tuesday, September 4. As plaintiff ended the phone call, he discovered Bolotte right around the corner, eavesdropping on plaintiff's phone conversation. Bolotte quickly escaped through a side door.

96.    Plaintiff alleges on information and beliefs that Bolotte knew that Palmer would call plaintiff that afternoon and that Bolotte eavesdropped on their conversation on purpose to learn first hand if the Settlement Agreement would be signed before the hearing date the following week; that the "Settlement Agreement" had been designed in consultation with Bolotte and other co-conspirators from the Superior Court and the AOC for the purpose of protecting them in case of litigation; that Bolotte and her co-conspirators had willingly and knowingly acted beyond the scope of their authority, in willful violation of law, and with malice; and that Bolotte and other defendants knew they could not rely on the Judicial Branch Litigation Management Program to defend them in court if plaintiff found out about the conspiracy to defraud and deprive plaintiff of his rights.

97.    Pursuant to CA Government Code 995.2, "A public entity may refuse to provide for the defense of a civil action or proceeding brought against an employee or former employee if the public entity determines any of the following: (1) The act or omission was not within the scope of his or her employment. (2) He or she acted or failed to act because of actual fraud, corruption, or actual malice."

1

**September 4, 2007 (Tuesday)**

2       98.     On September 4, plaintiff met with Palmer. Plaintiff suggested a different

3     settlement agreement, which Palmer rejected unless it included a paragraph designed

4     to prevent or discourage future litigation. Palmer made a comment about plaintiff

5     being a "foreigner" and then went on to explain that being a "foreigner" meant that

6     plaintiff didn't understand how an American court worked. Palmer said plaintiff had

7     no chance of winning the pending court case. Palmer asserted that all that was

8     needed to make plaintiff lose plaintiff's small claim action against Trester was for

9     Palmer to show up at the hearing and let the judge know that Palmer was a

10    professional Property Manager.

11      99.     Plaintiff alleges on information and beliefs that as a last resort, Trester,

12    Power, Bolotte, and the other co-conspirators had made arrangements for having the

13    case dismissed with prejudice by the Court at, or immediately after, the September 7

14    hearing; and that the co-conspirators had agreed to have Palmer make an appearance

15    at the hearing and make a statement to hearing officer, that way creating a false

16    record that the case had been dismissed with prejudice for legitimate, legal reasons.

17    Plaintiff refused to sign the agreement and there was no settlement.

18

19

**September 5, 2007 (Wednesday)**

20      100.    On September 5, plaintiff filed to have the small claim action dismissed

21    without prejudice. Also on September 5, plaintiff made a request for AOC records

22    vis-à-vis the Superior Court – AOC ex parte communication and the August 23

23    meeting in which Peter Allen and a judge participated.

24

25

**September 9, 2007 (Sunday)**

26      101.    On September 9, plaintiff asked his employer to be assigned to a different

27    client than AOC because the ex parte communication between employees of the

28    Superior Court and the AOC had had a negative impact on plaintiff's health.

| | |
|---|---|
| 1 | **September 13, 2007 (Thursday)** |
| 2 | 102.   On September 13, Gelade called plaintiff at home. Gelade wanted to know |
| 3 | why plaintiff requested AOC records on September 5. Plaintiff confirmed he wanted |
| 4 | to file complaints against Judicial Branch employees involved in the ex parte |
| 5 | communication. Gelade said that he didn't "think they'll give them" (the records) to |
| 6 | plaintiff. Gelade voluntarily brought up the status of plaintiff's legal dispute with |
| 7 | Trester and specifically asked, "What happened? I thought you were suppose to |
| 8 | settle!" Plaintiff had not told Gelade that there had been no settlement, so this was a |
| 9 | matter that Gelade had learned from someone other than plaintiff. |
| 10 | 103.   Gelade also wanted to know how plaintiff knew that Allen had had a phone |
| 11 | conference with a judge on August 23 and about plaintiff's current employment |
| 12 | status with AppleOne. |
| 13 | 104.   Plaintiff alleges on information and belief that immediately after Gelade (and |
| 14 | other defendants and co-conspirators) learned of plaintiff's intention to file |
| 15 | complaints against Superior Court and AOC employees that had been involved in ex |
| 16 | parte communication about plaintiff and his court case, Gelade and others engaged |
| 17 | in a conspiracy and cover-up. Their purpose was to try to prevent plaintiff from |
| 18 | filing successful complaints with the Judicial Branch Internal Audit Services, the CA |
| 19 | State Bar, the Arizona State Bar, and the CA Commission on Judicial Performance; |
| 20 | and law suits against co-conspirators once plaintiff learned the details of their |
| 21 | wrongs. |
| 22 | |
| 23 | **September 14, 2007 (Friday)** |
| 24 | 105.   On September 14, plaintiff received a phone call from Sommer, an attorney in |
| 25 | the AOC Office of General Counsel ("OGC"). Sommer asked a few questions about |
| 26 | the records plaintiff had requested on September 5. Sommer misrepresented that he |
| 27 | had called to help plaintiff with his records request. Sommer did not during this |
| 28 | phone conversation, and at no point during his many contacts with plaintiff during |

1   October 2007 – January 2008, say to plaintiff that his contacts with plaintiff were a
2   matter of Sommer acting in his capacity as an attorney representing a client.
3   106.   Plaintiff alleges on information and beliefs that the OGC is not normally
4   involved in public records requests and that public record requests are handled by
5   the AOC Office of Communications in the EOP Division, lead by Kenneth Kann and
6   Dianne Bolotte.
7
8   107.   Plaintiff has since September 2007 been denied detailed information about the
9   August 23 meeting. Plaintiff alleges on information and beliefs that defendants since
10  September 5 have taken several steps to create a false, yet flexible record vis-à-vis
11  the August 23 meeting, and that this false record has been deliberately designed to
12  explain away evidence that Power participated in the August 23 meeting and that the
13  meeting was part of defendants conspiracy to wrong plaintiff.
14  108.   Plaintiff alleges on information and beliefs that as part of this false record,
15  defendants had a last minute addition made to an article appearing in the Fall 2007
16  edition of the Solano County Bar Association ("SCBA") magazine. The magazine
17  was released on, or right before, November 7, 2007. The magazine included an
18  article by Power. The paragraph at the end of the article states that, "Cynthia Passon
19  is the Senior Management Analyst for the Executive Office, Superior Court of
20  California, County of Solano. Judge Power and Brian Taylor also conributed [sic.] to
21  the article."
22  109.   Plaintiff alleges on information and beliefs that the Fall 2007 magazine has
23  recently been made unavailable from the SCBA website.
24  110.   Plaintiff alleges on information and beliefs that the typo in the paragraph
25  ("conributed") indicates that the graphic designer revised or added the paragraph
26  towards the end of the magazine production cycle, right before the magazine went to
27  print, and that the typo appeared because the paragraph was added so late into the
28  production cycle that nobody had time to proof read (copy edit) the final pre-print

1    version.

2    111.   Plaintiff alleges on information and beliefs that this last minute revision was

3    made as a way for defendants to "explain" why phone records provide evidence of a

4    long phone conversation between Solano County Superior Court staff (in the Court

5    Executive Office) and AOC Office of Communications employees on August 23.

6    112.   The paragraph does not actually say that Passon contributed to the article,

7    only that "Cynthia Passon is the Senior Management Analyst for the Executive

8    Office, Superior Court of California, County of Solano." Plaintiff alleges on

9    information and beliefs that defendants planted this false record in the SCBA

10   magazine so that defendants could later allege that the other person that

11   "contributed" to the magazine was Peter Allen.

12   113.   Plaintiff included a copy of the Fall 2007 SCBA article with the Judicial

13   Branch Claims filed with the AOC and the Superior Court Executive Office in

14   January 2008.

15   114.   Plaintiff alleges on information and beliefs that the Superior Court Executive

16   Office involved the SCBA in defendants' attempts to create a false record about the

17   August 23 phone conference by having the SCBA add the following paragraph to its

18   website:

19   115.   "The magazine is absolutely awesome. Informative, polished, professional,

20   excellent publication. You have done an outstanding job. I am proud to have made a

21   contribution to the first issue. (And how cool that you included my name, I am

22   grateful) - Cynthia T. Passon, Senior Management Analyst, Superior Court of

23   California." (http://www.solanobar.org/magazine.htm).

24   116.   Plaintiff alleges on information and beliefs that the verbiage was crafted to

25   later explain that Passon having "made a contribution" did not necessarily mean that

26   Passon had help write or draft the article.

27   117.   Plaintiff alleges on information and beliefs that the Temporary Judge program

28   in Solano County is run by the SCBA; that the SCBA receives funding from the

FIRST AMENDED COMPLAINT                                                          - 28 -
CV-08-3461 Nylund v. Abueg et al

1   Superior Court to run the Temporary Judge program; that the SCBA has used the

2   Temporary Judge funding to finance and promote the business interests of its

3   attorney members, for example the financing of its Attorney Referral Service; that

4   the Superior Court Executive Office has been directly involved with helping the

5   SCBA defraud the State of CA of hundreds of thousands of dollars; that Taylor has

6   during his tenure as Court Executive Officer had a role in SCBA defrauding the

7   State of CA; and that Taylor on May 6, 2008 sent plaintiff a fraudulent record in the

8   form of a fabricated Superior Court-SCBA grant application / agreement.

9

10   **Requesting records from AOC: September – October 2007**

11   118.   Plaintiff alleges on information and beliefs that an ongoing conspiracy to

12   deprive plaintiff of his rights may be inferred from circumstances, including the

13   nature of the acts done, the relationships between the parties, and the interests of the

14   alleged co-conspirators; and that the conspiracy included, but may not have been

15   limited to, the following.

16   119.   Plaintiff's public record requests were either unnecessarily delayed or

17   unlawfully denied. For example, plaintiff's requests for a copy of the "Court

18   Administration Reference Manual: A comprehensive guide to the administrative

19   duties of presiding judges and court executive officers" available on the Judicial

20   Branch intranet at http://serranus.courtinfo.ca.gov/reference/carm/.

21   120.   Other members of the public who requested records from the AOC were

22   assisted by employees from the Office of Communications in the EOP Division.

23   With only a few exceptions, all of plaintiff's requests were handled by Sommer in

24   the OGC, whose duties include in-house counsel. According to correspondence from

25   Sommer, Sommer handled no other public record requests during fall of 2007 than

26   those of plaintiff.

27   121.   Bolotte, Bayangos, and Sommer used plaintiff's requests in an attempt to

28   create a false record of events.

1    122.   On September 28, Bayangos showed plaintiff four "redacted" records in the

2    AOC HR Division. They were (1) an email dated August 7, 2007, from unknown

3    DOE to other unknown DOE/S, (2) a Written Declaration allegedly authored and

4    signed by Justina Abueg on July 20, 2007, (3) a Written Declaration allegedly

5    authored and signed by "KK" on July 20, 2007, and (4) a Written Declaration

6    allegedly authored and signed by unknown DOE on July 24, 2007. Plaintiff alleges

7    on information and beliefs that the Written Declaration allegedly authored and

8    signed by "KK" on July 20, 2007 may be attributed to Kerry Krumpen, Process

9    Clerk in the Superior Court Vallejo Civil/Small Claims Division (though not

10   authored by Krumpen).

11   123.   Before plaintiff began the inspection of these records on September 28,

12   plaintiff asked Bayangos to confirm that plaintiff was allowed to reproduce the

13   records during the inspection. Plaintiff confirmed that reproduce meant copy.

14   Bayangos confirmed plaintiff was allowed to copy the records. Plaintiff began by

15   taking some notes. Plaintiff then took out his digital camera to take pictures of the

16   records. Bayangos became irate, yelled at plaintiff that he "can't do that." Plaintiff

17   told Bayangos that she had confirmed he could copy the records. Bayangos tried to

18   pull the records away from plaintiff. Bayangos then got on the phone, told the person

19   who answered on the other end that plaintiff was "taking pictures," and asked "is he

20   allowed to do that?" Bayangos then violently pulled the records out of plaintiff's

21   hands and stormed out of the room. Bayangos volatile and violent behavior

22   frightened plaintiff and made him fear for his personal safety.

23   124.   On March 1, 2008, plaintiff made a discovery that explained why the

24   "redacted" records he had inspected on September 28, and the even more redacted

25   versions of these "redacted" records mailed to plaintiff by Sommer the following

26   week, included so many details contrary to the truth. The records had been

27   fabricated, as defined by, for example, the CA Penal Code.

28   125.   CA PC 134, "Every person guilty of preparing any false or ante-dated book,

1  |  paper, record, instrument in writing, or other matter or thing, with intent to produce

2  |  it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or

3  |  true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of

4  |  felony."

5  |  126.   Bayangos and Sommer had attempted to make plaintiff believe that Abueg

6  |  had authored and signed a Written Declaration on July 20, 2007 and that only four

7  |  pieces had been "redacted" from the copy of the Written Declaration given to

8  |  plaintiff. One, Abueg's name; Two, Trester's name; Three, the case number; and

9  |  Four, Abueg's signature.

10  |  127.   Plaintiff alleges on information and beliefs that Abueg did not author a

11  |  Written Declaration on July 20, 2007; if Abueg authored a Written Declaration at

12  |  all, she authored it at a later date; the "redacted" Abueg Written Declaration had

13  |  been authored by someone other than Abueg at a much later date and without

14  |  Abueg's knowledge; the content of the Abueg "Written Declaration" that Bayangos

15  |  showed plaintiff, and the even more redacted version Sommer gave to plaintiff, did

16  |  and could not match the content of the Abueg Written Declaration attached to the

17  |  August 7 email as a Word file; the alleged Abueg Written Declaration had been

18  |  authored by an attorney without Abueg's knowledge; and the Abueg Written

19  |  Declaration, along with the other records, had been authored by attorneys, antedated,

20  |  for the purpose of creating a false record about plaintiff's July 19 filing and the ex

21  |  parte communication between Superior Court and AOC employees.

22  |  128.   For example, according to the "redacted" records, Abueg had told plaintiff

23  |  that a note would be added to the court case file over plaintiff's "refusal" to file the

24  |  local form on July 19. Abueg never said anything about a note. According to the

25  |  Written Declaration authored by unknown DOE, a note had been added to the case

26  |  file.

27  |  129.   The truth is that no note was ever added to case file. Plaintiff reviewed his

28  |  case file on August 6. There was no note in the case file at that time. Plaintiff had a

1    copy made of everything in this case file on October 1. There was no note in the case

2    file at this point either. Plaintiff later asked Abueg for a copy of this alleged note.

3    Taylor got back to plaintiff on Abueg's behalf and refused plaintiff a copy of the

4    note allegedly to the case file.

5    130.   Plaintiff alleges on information and beliefs that according to Superior Court

6    policy, litigants have a right to review content in their case files; the fabricated

7    Written Declarations had been prepared fraudulently and with the intent to create a

8    false record vis-à-vis the ex parte communication between the Superior Court and

9    the AOC; and that the content of the August 7, 2007 email had been modified to

10   create a false record vis-à-vis why Power had not ruled on plaintiff's July 23 motion.

11   131.   The unknown author of Abueg's Written Declaration entertained serious

12   doubts as to the truth of the publication and published it with reckless disregard for

13   truth or falsity and with actual malice, including but not limited to, writing that

14   plaintiff had said to Abueg "I work at the AOC. Here's my badge," and that plaintiff

15   had started to present his badge. Plaintiff has suffered loss of reputation, shame,

16   mortification and hurt feelings as a result. Plaintiff continues to experience shame,

17   mortification, and hurt feelings due to not having had the opportunity to clear his

18   name and restore his reputation.

19

20           **Requesting records from Solano County: November – December 2007**

21   132.   In November 2007, plaintiff ascertained that Superior Court records were

22   available on the Solano County email server/s, and thus subject to the CA Public

23   Records Act, as the act applies to counties, but not to the state judicial branch.

24   133.   On November 15, plaintiff requested the following records from the County

25   of Solano pursuant to the CA Public Records Act.

26   o      "All emails on the Solano County incoming and outgoing email server/s sent

27   from *@solanocourts.com to *@jud.ca.gov (and vice versa) between July 19, 2007

**28** and November 14, 2007"

1    o    "An email on the Solano County outgoing email server/s (or from backup
2        tapes) that was sent Tuesday, August 7, 2007 at 2:04 p.m. The sender's email suffix
3        was most likely *@solanocourts.com. Email subject line reads 'RE: Alternative
4        Dispute Resolution.' The email includes four attachments (three Word files and one
5        PDF)."

6    134.    Plaintiff had sent the public record request to County of Solano IT staff. At
7        first, plaintiff's request was ignored. Then, County Counsel's office tried to mislead
8        plaintiff about whether or not Solano County was in possession of the records.
9        Eventually, County Counsel Dennis Bunting confirmed the County maintained the
10       requested records, but refused plaintiff access to the records.

11   135.    Bunting alleged in December 12 letter to plaintiff that the records plaintiff
12       sought "are not a 'judicial record' as defined in Code of Civil Procedure, Sec. 1904."
13       Plaintiff alleges on information and beliefs that Bunting's reference was unrelated to
14       the CA Public Records Act, and really about CA Code of Civil Procedure 1916.
15   136.    CA Code of Civil Procedure 1916, "Any judicial record may be impeached
16       by evidence of a want of jurisdiction in the Court or judicial officer, of collusion
17       between the parties, or of fraud in the party offering the record, in respect to the
18       proceedings."

19   137.    Bunting included Sue Hansen at the AOC in an email exchange between
20       Bunting and plaintiff. Plaintiff alleges on information and beliefs that Hansen is an
21       attorney in the AOC Office of General Counsel; that Hansen is assigned to the
22       Superior Court of CA, County of Solano under the Judicial Branch Litigation
23       Management Program; and that Bunting included Hansen pursuant to CA Rule of
24       Court 10.202 (Judicial Branch Claims and Litigation Management).

25   138.    CA Rule of Court 10.202 reads in part, "Duties of the Office of the General
26       Counsel…(To) provide legal assistance to the trial or appellate court, and to any
27       justice, judge, subordinate judicial officer, court executive officer or administrator,
28       and trial or appellate court employee who is named as a defendant or responsible

1    party."

2    139.   Plaintiff alleges on information and beliefs that Bunting made the reference to

3    CA Code of Civil Procedure 1904 and included Hansen in the email exchange

4    because the requested records are evidence of collusion and fraud; and that Bunting

5    also included Taylor in the email exchange because Taylor has been directly

6    involved in the collusion and fraud.

7    140.   Bunting wrote plaintiff in an email on December 16 that, "*We will not permit*

8    *an inspection of the records, absent a* waiver from our client, the Solano County

9    Superior Court or the AOC, or *a court order*." (Bold italics added).

10   141.   Plaintiff alleges on information and beliefs that Bunting is a former Solano

11   County judge that worked as a judge in Solano County at the same time as Power

12   during the early 1990s; that Power and Bunting have known each other for at least a

13   decade; and that Bunting and Taylor know each other.

14   142.   Plaintiff alleges on information and beliefs that Bunting cited CA Code of

15   Civil Procedure 1904 and copied Sue Hansen in the AOC Office of General Counsel

16   because Bunting had discovered that the requested records are evidence of collusion

17   and fraud; and that Bunting's actions were not based on legal authority found in the

18   CA Public Records Act, but directly linked to Bunting's role as County Counsel

19   pursuant to the CA Tort Claims Act (Government Code 810 et seq).

20   143.   CA Government Act 811.9(a), "Notwithstanding any other provision of law,

21   judges, subordinate judicial officers, and court executive officers of the superior

22   courts are state officers for purposes of Part 1 (commencing with Sec. 810) to Part 7

23   (commencing with Sec. 995), inclusive, and trial court employees are employees of

24   the trial court for purposes of Part 1 (commencing with Sec. 810) to Part 7

25   (commencing with Sec. 995), inclusive. The Judicial Council shall provide for

26   representation, defense, and indemnification of those individuals and the court

27   pursuant to Part 1 (commencing with Sec. 810) to Part 7 (commencing with Sec.

28   995), inclusive. *The Judicial Council shall provide for that representation or*

1  ***defense through the county counsel***, the Attorney General, or other counsel. The
2  county counsel and the Attorney General may, but are not required to, provide
3  representation or defense for the Judicial Council." (Bold italics added).
4
5  **Some of the Harm Caused by Publication with Reckless Disregard for Truth or**
6  **Falsity and with Actual Malice: December 2007 – January 2008**
7  144.   On December 7, 2007, plaintiff's former employer AppleOne presented
8  Bolotte's Incompatible Activities Statement as "evidence" at a hearing that
9  plaintiff's employment had been terminated as a result of plaintiff's misconduct.
10  145.   On January 9, 2008, plaintiff's former employer AppleOne testified under
11  penalty of perjury that an AOC employee, whom plaintiff alleges on information and
12  beliefs was Bayangos, had contacted AppleOne sometime right before August 30.
13  146.   According to AppleOne's testimony, the AOC employee had told AppleOne
14  that plaintiff on July 19 "had left early in order to go take care of a personal
15  matter..he had actually went [sic.] to file a complaint with Solano County court...he
16  actually went in flashing his badge there because he didn't like the way the
17  paperwork was being processed, so he said, 'I work for the Judicial Council'." These
18  defamatory statements were made by an AOC employee, which plaintiff alleges was
19  Angela Bayangos, with reckless disregard for truth or falsity and with actual malice.
20
21  **Presenting Claims to CA Judicial Branch: January 2008**
22  147.   Plaintiff filed claims with the CA Judicial Branch the week of January 14,
23  2008. That same week, plaintiff received antedated correspondence from Taylor.
24  Plaintiff alleges on information and beliefs that Taylor through the antedated letter
25  attempted to create a false record vis-à-vis plaintiff having submitted claims
26  pursuant to the CA Tort Claims Act.
27  **148.**   Taylor, other defendants, and co-conspirators had acted outside the scope of
28  their employment, authority, and acted because of fraud, and with malice. Plaintiff

1    alleges on information and beliefs defendants knew that the AOC Office of General

2    Counsel could lawfully and legitimately refuse to provide for the defense of a civil

3    action or proceeding brought against them as employees (or former employees)

4    pursuant to CA Government Code 995.2; and that Taylor and other defendants,

5    including DOES 1-20, as a first line of defense, attempted to create a false record

6    vis-à-vis the claims plaintiff had submitted to the California Judicial Branch.

7    149.    Staff at the AOC engaged in very similar bad-faith tactics. On January 7,

8    2008, plaintiff gave Sue Hansen notice of his intention to file a claim. Hansen made

9    arrangements for plaintiff to pick up claim forms at the Judicial Council. The claim

10    forms instructed claimant to "deliver or mail this claim form to" Judicial Council

11    Secretariat on the third floor at 455 Golden Gate Avenue, San Francisco, California.

12    150.    On January 14, plaintiff went to 455 Golden Gate in San Francisco to deliver

13    his claim in person. When plaintiff arrived at Secretariat on the third floor, the

14    receptionist would not accept the claim form, but instructed plaintiff to go to the

15    fifth floor in a different wing of the building complex and wait for Nancy Spero.

16    Plaintiff arrived on the fifth floor and waited for Spero, who showed up after a few

17    minutes. Spero, a senior attorney in the Executive Office Programs Division

18    ("EOP") whose superiors are Bolotte and Kann, instructed plaintiff to hand over the

19    claim to her. Spero refused to give plaintiff a receipt, a stamped copy of the claim

20    form, or even her business card. Spero said it was enough that plaintiff "knew her

21    name." When plaintiff wanted to give Spero a check for the $25 filing fee, Spero

22    didn't know what to do and had to go back to the EOP office to get instructions.

23    Spero returned after a few minutes and said to plaintiff that no filing fee was

24    necessary, which was contrary to what plaintiff had been told by an AOC employee

25    the previous week. Plaintiff refused to hand over the claim to Spero without a receipt

26    or stamped claim form as proof that claim had been presented. Plaintiff left the AOC

27    without having had the claim accepted. Plaintiff later mailed the claim to the

28    Secretariat of the Judicial Council on the third floor, since AOC staff had refused to

| | |
|---|---|
| 1 | accept the claim when plaintiff wanted to deliver the claim in person to the |
| 2 | Secretariat of the Judicial Council on the third floor. |
| 3 | 151.   Pursuant to CA Government Act 915, "A claim…shall be presented to a |
| 4 | judicial branch entity in accordance with the following means…Delivering or |
| 5 | mailing it to the Secretariat of the Judicial Council, if against the Judicial Council or |
| 6 | the Administrative Office of the Courts." |
| 7 | 152.   Plaintiff alleges on information and beliefs that AOC employees conspired to |
| 8 | trick plaintiff into giving his claim to Spero, an employee in the EOP Division |
| 9 | whose superiors are Bolotte and Kann, that way (1) preventing AOC leadership from |
| 10 | finding out about defendants' wrongs and (2) providing the OGC the means to |
| 11 | challenge plaintiff's lawsuit because plaintiff had not presented the claim to the |
| 12 | Judicial Council Secretariat on the third floor - as required by CA Government |
| 13 | Code, Sec. 915(c)(4) and the Judicial Branch claim form - but handed over the claim |
| 14 | to an employee on the fifth floor without authority to accept the claim. |
| 15 | 153.   Though the AOC Office of General Counsel eventually recognized that |
| 16 | plaintiff's claims had been presented, plaintiff alleges on information and beliefs that |
| 17 | the claim content reviewed by the Judicial Branch Claims and Litigation |
| 18 | Management Program was not identical to the content of the claims plaintiff had |
| 19 | presented to Judicial Branch entities in accordance with the CA Tort Claims Act. |
| 20 | 154.   Plaintiff alleges on information and beliefs that AOC and Superior Court |
| 21 | employees manipulated the content of plaintiff's claims to conceal their own |
| 22 | wrongs, eliminate records with details about their own wrongs, and destroy evidence |
| 23 | of their own wrongs, including the fabricated, false records Sommer had mailed to |
| 24 | plaintiff in early October 2007. |
| 25 | |
| 26 | **155.**   Defendants have acted oppressively, fraudulently, maliciously and in willful |
| 27 | and conscious disregard of plaintiff's rights, and with the intention of causing, or in |
| 28 | reckless disregard of the probability of causing, injury and emotional distress to the |

1   plaintiff. As a legal result of the conduct of the defendants, plaintiff suffered and

2   continues to suffer substantial losses in earnings, in addition to other monetary harm.

3   As a legal result of the conduct of the defendants, plaintiff suffered emotional

4   distress. Plaintiff suffered mental distress, suffering and anguish as a legal result of

5   defendants' outrageous conduct, reacting to their wrongs with humiliation,

6   embarrassment, anger, disappointment and worry, all of which is substantial and

7   enduring. As a legal result of the conduct of the defendants, suffering and anguish

8   emotional distress harm to reputation or shame, mortification or hurt feelings,

9

10                    **FIRST CAUSE OF ACTION (Intentional tort)**

11       Fraud, misrepresentation, theft and attempted theft by unlicensed employees with

12              reference to a transaction for which a real estate license is needed

13                          (Against Montgomery Partners and DOES)

14      156.   Plaintiff hereby incorporates by reference all previous paragraphs of this

15      complaint as if fully set forth herein.

16      157.   Montgomery Partners employees (Melina Tovar, Joy Johnson, and DOES)

17      kept all of plaintiff's $1,150 security deposit and demanded plaintiff paid

18      Montgomery Partners an additional $166.06.

19      158.   Montgomery Partners employees deducted $125 from plaintiff's security

20      deposit for carpet cleaning and then misrepresented that $918.40 had been deducted

21      for a carpet replacement.

22      159.   Montgomery Partners employees did not have the carpet replaced and no

23      $918.40 charge was incurred (grand theft).

24      160.   Montgomery Partners employees misrepresented that $92.66 had been

25      deducted from plaintiff's security deposit for blind cleaning.

26      161.   Montgomery Partners did not have the blinds cleaned and no $92.66 charge

27      was incurred (petty theft).

28      162.   Montgomery Partners employees misrepresented that plaintiff owed owner

1   $166.06 and demanded plaintiff immediately paid Montgomery Partners an

2   additional $166.06 (attempted petty theft).

3   163.   CA Penal Code 484(a), "Every person who shall feloniously steal, take, carry,

4   lead, or drive away the personal property of another, or who shall fraudulently

5   appropriate property which has been entrusted to him or her, or who shall knowingly

6   and designedly, by any false or fraudulent representation or pretense, defraud any

7   other person of money, labor or real or personal property, or who causes or procures

8   others to report falsely of his or her wealth or mercantile character and by thus

9   imposing upon any person, obtains credit and thereby fraudulently gets or obtains

10  possession of money, or property or obtains the labor or service of another, is guilty

11  of theft."

12  WHEREFORE, Plaintiff seeks relief as set forth below.

13

14                  **SECOND CAUSE OF ACTION (CA Civil Code 1709 et seq)**

15  Willful deception with intent to induce plaintiff to alter his position to his injury or

16                                              risk

17                                  (Against Schaeffer and DOES)

18  164.   Plaintiff hereby incorporates by reference all previous paragraphs of this

19  complaint as if fully set forth herein.

20  165.   In his December 2006 letter, Barrett Schaefer misrepresented to plaintiff that

21  plaintiff's former landlord had incurred attorneys fees as a result of plaintiff's

22  November 29 letter. Schaefer then threatened that, "Should you proceed with this

23  claim, we will counter you and be forced to proceed with seeking recovery of

24  attorneys fees from you."

25  166.   In a letter dated March 28, 2007, Schaefer misrepresented to the Superior

26  Court of CA what plaintiff had asked in a subpoena be produced (subpoena dated

27  March 14, 2007).

28  167.   A deceit, within the meaning of CA Civil Code 1709 et seq, is either the

1      suggestion, as a fact, of that which is not true, by one who does not believe it to be

2      true; or the assertion, as a fact, of that which is not true, by one who has no

3      reasonable ground for believing it to be true. One who willfully deceives another

4      with intent to induce him to alter his position to his injury or risk, is liable for any

5      damage which he thereby suffers.

6      WHEREFORE, Plaintiff seeks relief as set forth below.

7

8      **THIRD CAUSE OF ACTION (CA Civil Code 1709 et seq)**

9      Deceit with reference to a transaction for which a real estate license is needed

10      (Against Montgomery Partners and DOES 1 - 20)

11      168.   Plaintiff hereby incorporates by reference all previous paragraphs of this

12      complaint as if fully set forth herein.

13      169.   In February 2007, after plaintiff again demanded his refund, a property

14      management employee (Tamara Evans) threatened that plaintiff's file would be

15      forwarded to a collection agency if plaintiff didn't pay Montgomery Partners

16      $166.06 within 15 days.

17      170.   CA Civil Code 1709, "One who willfully deceives another with intent to

18      induce him to alter his position to his injury or risk, is liable for any damage which

19      he thereby suffers."

20      171.   Plaintiff did not pay Montgomery Partners $166.06.

21      172.   Montgomery Partners did not forward plaintiff's file to a collection agency.

22      173.   CA Civil Code 1710, "A deceit, within the meaning of the last section, is

23      either: 1. The suggestion, as a fact, of that which is not true, by one who does not

24      believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who

25      has no reasonable ground for believing it to be true; 3. The suppression of a fact, by

26      one who is bound to disclose it, or who gives information of other facts which are

27      likely to mislead for want of communication of that fact; or, 4. A promise, made

28      without any intention of performing it."

1    WHEREFORE, Plaintiff seeks relief as set forth below.

2

3    **FOURTH CAUSE OF ACTION (CA Business & Professions Code 10159.2[a])**

4    (Against Trester)

5    Failure to supervise salespersons and non-licenses in activities for which a real estate

6    license is required

7    174.    Plaintiff hereby incorporates by reference all previous paragraphs of this

8    complaint as if fully set forth herein.

9    175.    CA B&PC 10159.2(a), "The officer designated by a corporate broker

10   licensee pursuant to Section 10211 shall be responsible for the supervision and

11   control of the activities conducted on behalf of the corporation by its officers and

12   employees as necessary to secure full compliance with the provisions of (CA P&PC,

13   DIVISION 4, REAL ESTATE), including the supervision of salespersons licensed

14   to the corporation in the performance of acts for which a real estate license is

15   required."

16   176.    But for Trester failing to supervise and control John Palmer, Joy Johnson,

17   Melina Tovar, Tamara Evans, and DOES 1 – 20 in activities for which a real estate

18   license is required, including property management, plaintiff's former landlord

19   would not have had to consult an attorney (Barrett Schaefer) for a property

20   management transaction as trivial as the return of a tenant security deposit, unless

21   Montgomery Partners was concerned for reasons arising out of the wrongdoings of

22   its licensed and non-licensed employees.

23   177.    "For purposes of liability to third parties for torts, a real estate salesperson

24   is the agent of the broker who employs him or her. The broker is liable as a matter of

25   law for all damages caused to third persons by the tortious acts of the salesperson

26   committed within the course and scope of employment" (CA Civil Jury Instruction

27   No. 3703).

28   WHEREFORE, Plaintiff seeks relief as set forth below.

| | |
|---|---|
| 1 | **FIFTH CAUSE OF ACTION (CA Business & Professions Code 10137)** |
| 2 | Compensation of non-licensee for performance of services requiring a real estate |
| 3 | license |
| 4 | (Against Trester) |
| 5 | 178.     Plaintiff hereby incorporates by reference all previous paragraphs of this |
| 6 | complaint as if fully set forth herein. |
| 7 | 179.     It is unlawful for any licensed real estate broker to employ or compensate, |
| 8 | directly or indirectly, any person for performing any of the acts within the scope of |
| 9 | this chapter who is not a licensed real estate broker, or a real estate salesman |
| 10 | licensed under the broker employing or compensating him (CA B&PC 10137). |
| 11 | 180.    Montgomery Partners employed non-licensed individuals to perform |
| 12 | activities for which a real estate license is required, such as property management. |
| 13 | 181.   For purposes of liability to third parties for torts, a real estate salesperson is |
| 14 | the agent of the broker who employs him or her. The broker is liable as a matter of |
| 15 | law for all damages caused to third persons by the tortious acts of the salesperson |
| 16 | committed within the course and scope of employment (CA Civil Jury Instruction |
| 17 | No. 3703). |
| 18 | WHEREFORE, Plaintiff seeks relief as set forth below. |
| 19 | |
| 20 | **SIXTH CAUSE OF ACTION (42 U.S.C. 1983)** |
| 21 | Deprivation of 1st Amendment Right to Petition Government for Redress of |
| 22 | Grievances |
| 23 | (Against Abueg and DOES 1-20) |
| 24 | 182.   Plaintiff hereby incorporates by reference all previous paragraphs of this |
| 25 | complaint as if fully set forth herein. |
| 26 | 183.   The Petition Clause of the 1st Amendment to the US Constitution guarantees |
| 27 | the right to petition the government for redress of grievances. |
| 28 | 184.   Filing a lawsuit is an exercise of the constitutional right to petition. |

1    185.   Justina Abueg deprived plaintiff of his constitutional around 8:15 a.m. on July

2    19, 2007 at the Court Clerk's office on 321 Tuolumne Street in Vallejo, California.

3    WHEREFORE, Plaintiff seeks relief as set forth below.

4

5    **SEVENTH CAUSE OF ACTION (CA B&PC 1709 et seq)**

6    Willful deception with intent to induce plaintiff to alter his position to his injury or

7    risk

8    (Against Trester)

9    186.   Plaintiff hereby incorporates by reference all previous paragraphs of this

10   complaint as if fully set forth herein.

11   187.   Trester sent to plaintiff a letter dated July 30, 2007 and a copy of a letter

12   dated August 1, whose original had allegedly been mailed to Presiding Judge Power.

13   188.   Presiding Judge Power found out about Trester's willful deception because

14   plaintiff mailed Power copies of the Trester's letters. Plaintiff also had copies of

15   Trester's two letter placed in the Superior Court case file.

16   189.   Among other things, Trester threatened to file Malicious Prosecution and

17   Abuse of Process lawsuits against plaintiff in the Superior Court of CA, County of

18   Los Angeles (in which Trester served as a Judge pro tem).

19   190.   Trester's letter constituted willful deceptions with intent to induce plaintiff to

20   alter his position to his injury or risk (CA B&PC 1709)

21   191.   Small Claim actions are exempt from Malicious Prosecution lawsuits.

22   192.   An Abuse of Process lawsuit requires an abuse of process, which can only

23   take place after the action has been commenced. After action had been commenced,

24   plaintiff filed a motion not to have case assigned to a temporary Judge, which is not

25   abuse of process, but the exercise of a right under the California Constitution.

26   193.   A deceit, within the meaning of CA Civil Code 1709 et seq, is either: 1. The

27   suggestion, as a fact, of that which is not true, by one who does not believe it to be

28   true; 2. The assertion, as a fact, of that which is not true, by one who has no

1    reasonable ground for believing it to be true; 3. The suppression of a fact, by one

2    who is bound to disclose it, or who gives information of other facts which are likely

3    to mislead for want of communication of that fact; or, 4. A promise, made without

4    any intention of performing it."

5    WHEREFORE, Plaintiff seeks relief as set forth below.

6

7                    **EIGHT CAUSE OF ACTION (42 U.S.C. 1985)**

8              Conspiracy to Interfere with Civil Rights; Intimidating Party

9         (Against Allen, Bolotte, Gelade, Kann, Palmer, Passon, Power, Taylor, Treige,

10                           Trester, and DOES 1-20)

11   **194.**   Plaintiff hereby incorporates by reference all previous paragraphs of this

12   complaint as if fully set forth herein.

13   195.   Defendants conspired to deter plaintiff by intimidation from attending court

14   as a party.

15   **196.**   Bolotte deterred plaintiff from attending court as a party by intimidation

16   around 10:20 a.m. on August 10, 2007 in her office on 455 Golden Gate Avenue in

17   San Francisco, California.

18   197.   Plaintiff was harmed by co-conspirators' constitutional torts.

19   **198.**   Defendants are responsible for the harm because they were part of a

20   conspiracy to interfere with plaintiff's civil rights.

21   199.   Plaintiff suffered monetary damages and emotional distress.

22   WHEREFORE, Plaintiff seeks relief as set forth below.

23

24

25

26

27

28

1 | **NINTH CAUSE OF ACTION (42 U.S.C. 1985)**

2 | Conspiracy to Interfere with Civil Rights; Obstructing Justice

3 | (Against Allen, Bolotte, Gelade, Kann, Palmer, Passon, Power, Taylor, Treige,

4 | Trester, and DOES 1-20)

5 | 200.   Plaintiff hereby incorporates by reference all previous paragraphs of this

6 | complaint as if fully set forth herein.

7 | 201.   Defendants conspired for the purpose of impeding, hindering, obstructing, or

8 | defeating, in any manner, the due course of justice, with intent to deny plaintiff the

9 | equal protection of the laws.

10 | **202.**   Plaintiff was harmed by coconspirators' constitutional torts.

11 | 203.   Defendants are responsible for the harm because they were part of a

12 | conspiracy to interfere with plaintiff's civil rights.

13 | 204.   Plaintiff suffered monetary damages and emotional distress.

14 | WHEREFORE, Plaintiff seeks relief as set forth below.

15 |

16 | **TENTH CAUSE OF ACTION (42 U.S.C. 1983)**

17 | Conspiracy to Deprive 1st Amendment Right to Petition Government for Redress of

18 | Grievances

19 | (Against Allen, Bolotte, Gelade, Kann, Palmer, Passon, Power, Taylor, Treige,

20 | Trester, and DOES 1-20)

21 | 205.   Plaintiff hereby incorporates by reference all previous paragraphs of this

22 | complaint as if fully set forth herein.

23 | 206.   The Petition Clause of the 1st Amendment to the US Constitution guarantees

24 | the right to petition the government for redress of grievances.

25 | 207.   Filing and conducting a lawsuit is an exercise of the constitutional right to

26 | petition.

27 | 208.   Defendants conspired to deprive plaintiff of his right to have his petition

**28** | heard in open court, its merits determined by law, and its outcome based on

1 | evidence.

2 | WHEREFORE, Plaintiff seeks relief as set forth below.

3 |

4 | **ELEVENTH CAUSE OF ACTION (42 U.S.C. 1986)**

5 | Neglect to Prevent

6 | (Against Kann and DOES 1-20)

7 | 209.   Plaintiff hereby incorporates by reference all previous paragraphs of this

8 | complaint as if fully set forth herein.

9 | 210.   Plaintiff alleges on information and beliefs that Kann had knowledge of the

10 | wrongs conspired to be done and about to be committed and that Kann had the

11 | power to prevent or aid in preventing the commission of the same.

12 | 211.   Plaintiff alleges on information and beliefs that Kann neglected or refused to

13 | do so.

14 | 212.   Plaintiff alleges on information and beliefs that Kann by reasonable diligence

15 | could have prevented the wrongs.

16 | WHEREFORE, Plaintiff seeks relief as set forth below.

17 |

18 | **TWELFTH CAUSE OF ACTION (42 U.S.C. 1983)**

19 | Deprivation of 1st Amendment Right to Petition Government for Redress of

20 | Grievances

21 | (Against Bolotte and DOES 1-20)

22 | 213.   Plaintiff hereby incorporates by reference all previous paragraphs of this

23 | complaint as if fully set forth herein.

24 | 214.   Bolotte presented an Incompatible Activities Statement to plaintiff on August

25 | 30, 2007.

26 | 215.   Bolotte acted beyond the scope of her authority, in willful violation of the

27 | law, and with malice.

28 | 216.   Bolotte used the prestige of the CA Judicial Council and the Administrative

| | |
|---|---|
| 1 | Office of the Courts for the personal gain of Fredric Trester and John Palmer. |
| 2 | 217.   Pursuant to California Government Code, Sec. 19990, an Incompatible |
| 3 | Activities Statement shall be given before the determination of proscribed activities |
| 4 | and shall include a notice of for appeal from an incompatible activities |
| 5 | determination. |
| 6 | 218.   Bolotte's Incompatible Activities Statement placed plaintiff in a false light. |
| 7 | 219.   Bolotte's Incompatible Activities Statement did not include a notice for how |
| 8 | plaintiff could appeal from an incompatible activities determination. |
| 9 | 220.   By not including such notice, Bolotte deprived plaintiff of his right to petition |
| 10 | the government for redress of grievances. |
| 11 | WHEREFORE, Plaintiff seeks relief as set forth below. |

## THIRTEENTH CAUSE OF ACTION (42 U.S.C. 1983)

Conspiracy to Deprive 1st Amendment Right to Petition Government for Redress of
Grievances

(Against Bayangos, Bolotte, Sommer, Spero, Taylor and DOES 1-20)

**221.**   Plaintiff hereby incorporates by reference all previous paragraphs of this
complaint as if fully set forth herein.

**222.**   The Petition Clause of the 1st Amendment to the US Constitution guarantees
the right to petition the government for redress of grievances.

223.   Plaintiff informed AOC staff about plaintiff's intention to file complaints
against Superior Court and AOC employees involved in the ex parte communication.

224.   Plaintiff alleges on information and beliefs that defendants and co-
conspirators knew that such petitions could include, but might not be limited to,
complaints with the California State Bar, The Arizona State Bars, and the California
Commission on Judicial Performance.

225.   Plaintiff informed AOC Office of General Counsel about plaintiff's intention
to file Judicial Branch claim pursuant to CA Tort Claims Act.

1    226.   Defendants conspired to deprive plaintiff of his right to petition the
2    government for redress of grievances.

3    227.   Pursuant to California Government Code, Sec. 995.6, "A public entity is not
4    required to provide for the defense of an administrative proceeding brought against
5    an employee or former employee, but a public entity may provide for the defense of
6    an administrative proceeding brought against an employee or former employee…"

7    **228.**   Defendants acted beyond the scope of legal authority when conspiring to
8    prevent plaintiff from filing complaints with administrative and regulatory agencies
9    by, inter alia, unnecessarily delaying plaintiff's access to public records; denying
10   plaintiff public records without authority and against Judicial Branch policy; by
11   citing attorney-client privilege despite absence of actual attorney-client relationship;
12   by pretending to mail records to plaintiff; by preparing false, antedated records with
13   intent to allow the false records to be produced for fraudulent or deceitful purposes,
14   as true, upon any trial, proceeding, or inquiry, a felony under California Penal Code,
15   Sec. 134; and by trying to create false records vis-à-vis the claims plaintiff presented
16   to the CA Judicial Branch in January 2008.

17   WHEREFORE, Plaintiff seeks relief as set forth below.

18

19              **FOURTEENTH CAUSE OF ACTION (CA Civil Code 52.1 et seq)**
20              Coercive Interference with Exercise of Right Secured by CA Constitution
21                               (Against Bayangos)

22   229.   Plaintiff hereby incorporates by reference all previous paragraphs of this
23   complaint as if fully set forth herein.

24   230.   The CA Constitution grants plaintiff the right of access to information
25   concerning the conduct of the people's business, and, states that the writings of
26   public officials and agencies shall be open to public scrutiny.

27   231.   On September 28, 2007, around 2:10 p.m., in the AOC HR Division's office
28   at 455 Golden Gate Avenue, San Francisco, CA, Bayangos interfered by coercion

1  with plaintiff's exercise and enjoyment of a right secured by the California

2  constitution.

3  WHEREFORE, Plaintiff seeks relief as set forth below.

4

5  **FIFTEENTH CAUSE OF ACTION**

6  Publication with Reckless Disregard for Truth or Falsity and with Actual Malice

7  (Against Taylor and DOES 1-20)

8  232.  Plaintiff hereby incorporates by reference all previous paragraphs of this

9  complaint as if fully set forth herein.

10  233.  The Written Declaration (I) whose authorship was attributed to Abueg and

11  (II) which was allegedly signed by Abueg under penalty of perjury on July 20, 2007

12  was in truth authored by someone other than Abueg at a much later date.

13  234.  Plaintiff alleges on information and belief that the original electronic records

14  is evidence of fraud in the party offering the record.

15  235.  The person or persons that authored the fabricated record entertained serious

16  doubts as to the truth of the publication and published it with reckless disregard for

17  truth or falsity and with actual malice.

18  236.  Plaintiff has suffered loss of reputation, shame, mortification and hurt feelings

19  as a result.

20  237.  Plaintiff continues to experience shame, mortification, and hurt feelings due

21  to not having had the opportunity to clear his name and restore his reputation.

22  238.  Plaintiff alleges on information and beliefs that the fabricated Abueg Written

23  Declaration (along with other fabricated, ante-dated records) was distributed to

24  employees at the AOC, including but not limited to Angela Bayangos, through

25  Taylor.

26  WHEREFORE, Plaintiff seeks relief as set forth below.

27

28

| | |
|---|---|
| 1 | **SIXTEENTH CAUSE OF ACTION** |
| 2 | Publication with Reckless Disregard for Truth or Falsity and with Actual Malice |
| 3 | (Against Bolotte and DOES 1-20) |
| 4 | 239.   Plaintiff hereby incorporates by reference all previous paragraphs of this |
| 5 | complaint as if fully set forth herein. |
| 6 | 240.   Bolotte gave an Incompatible Activities Statement to plaintiff. |
| 7 | 241.   The Incompatible Activities Statement placed plaintiff in a false light by |
| 8 | creating an appearance that plaintiff had used his AOC affiliation for personal gain |
| 9 | or influence. |
| 10 | 242.   Bolotte, the authors or authors of the Incompatible Activities Statement, |
| 11 | entertained serious doubts as to the truth of the publication and published it with |
| 12 | reckless disregard for truth or falsity and with actual malice. |
| 13 | 243.   Plaintiff's former employer introduced the Incompatible Activities Statement |
| 14 | as "evidence" that plaintiff's employment had been terminated due to plaintiff's |
| 15 | misconduct. |
| 16 | 244.   Plaintiff suffered monetary damages and emotional distress. |
| 17 | 245.   Plaintiff has suffered loss of reputation, shame, mortification and hurt feelings |
| 18 | as a result. |
| 19 | 246.   Plaintiff continues to experience shame, mortification, and hurt feelings due |
| 20 | to not having had the opportunity to clear his name and restore his reputation. |
| 21 | WHEREFORE, Plaintiff seeks relief as set forth below. |
| 22 | |
| 23 | **SEVENTEENTH CAUSE OF ACTION** |
| 24 | Publication with Reckless Disregard for Truth or Falsity and with Actual Malice |
| 25 | (Against Bayangos and DOES 1-20) |
| 26 | 247.   Plaintiff hereby incorporates by reference all previous paragraphs of this |
| 27 | complaint as if fully set forth herein. |
| 28 | 248.   Plaintiff's former employer introduced Bayangos' statements as "evidence" |

| 1 | that plaintiff's employment had been terminated due to misconduct. |
| 2 | 249.   Bayangos entertained serious doubts as to the truth of the publication and |
| 3 | published it with reckless disregard for truth or falsity and with actual malice. |
| 4 | 250.   Plaintiff suffered monetary damages and emotional distress. |
| 5 | **251.**   Plaintiff has suffered loss of reputation, shame, mortification and hurt feelings |
| 6 | as a result. |
| 7 | **252.**   Plaintiff continues to experience shame, mortification, and hurt feelings due |
| 8 | to not having had the opportunity to clear his name and restore his reputation. |
| 9 | WHEREFORE, Plaintiff seeks relief as set forth below. |
| 10 | |

### EIGHTEENTH CAUSE OF ACTION

Conspiracy to commit fraud, deceit, and grand theft

(Against Allen, Bolotte, Gelade, Kann, Palmer, Passon, Power, Taylor, Treige, Trester, and DOES 1-20)

| 15 | 253.   Plaintiff hereby incorporates by reference all previous paragraphs of this |
| 16 | complaint as if fully set forth herein. |
| 17 | 254.   Plaintiff filed suit against Trester because Trester was vicariously liable for |
| 18 | the tortious acts of Montgomery Partners employees. |
| 19 | 255.   Had plaintiff's claim been settled in open court and according to law, plaintiff |
| 20 | would have been entitled to $3,450 in damages (not including actual filing fee). |
| 21 | 256.   Defendants agreed to commit wrongful acts intended to induce plaintiff to |
| 22 | accept a much smaller monetary settlement. |
| 23 | 257.   But for defendants' conspiracy, plaintiff would not have accepted a $600 |
| 24 | settlement. |
| 25 | 258.   Defendants' misrepresentation and concealment caused plaintiff to accept the |
| 26 | lesser settlement amount. |
| 27 | 259.   Plaintiff was harmed by defendants' conspiracy to defraud plaintiff. |
| 28 | 260.   All defendants who agreed to a common plan or design are liable, including |

1    defendants who committed no overt act and gained no benefit therefrom.

2    261.   Plaintiff suffered monetary damages and emotional distress.

3    WHEREFORE, Plaintiff seeks relief as set forth below.

4

5    **PRAYER FOR RELIEF**

6    Plaintiff seeks judgment against Defendants as follows:

7    262.   Compensatory damages, including emotional distress damages, lost wages,

8    and interest;

9    263.   Such punitive damage that the Court may deem just and proper;

10   264.   Equitable relief in the form of a court order (reference, paragraph 140) to

11   compel the County of Solano to give plaintiff the records identified in paragraph 133

12   as unaltered electronic files, with all the original file properties intact, on a CD or

13   DVD.

14   265.   All additional relief to which the plaintiff is entitled.

15   266.   Such other and further relief that the Court may deem just and proper

16

17   DEMAND FOR JURY TRIAL

18   Date: July 21, 2008

19   (Signature of party)

20   Patrik Nylund

21   (Printed Name)

22   2250 14th Ave., San Francisco, CA 94116

23   (Address)

24   patrik@pnylund.com

25   (E-mail address)

26   415-902-7068

27   (Telephone number)

28